VOELKEL et al. v. BENNET.
No. 366.

District Court, E. D. Pennsylvania.
Jan. 19, 1940.

Harry C. Kohlhas, Jr., Herbert Welty, and Fred. C. Gartner, all of Philadelphia, Pa., for plaintiffs.

Ralph N. Kellam, of Philadelphia, Pa., for defendant.

KIRKPATRICK, District Judge.

This was a civil action for the negligent killing of a five-year-old boy, brought jointly by his administrator and by his parents in their own right. Under the Pennsylvania statute the joinder of plaintiffs was proper.

Trial by jury resulted in a general verdict for the plaintiffs in the amount of $1,710. To interrogatories submitted by the Court, the jury answered that the $1,710 was awarded to the parents and that nothing was awarded to the administrator of the estate. The plaintiffs move for a new trial.

The amount of the recovery by the parents seems to be about right, and a new trial will not be granted on the ground of inadequacy.

The other grounds upon which a new trial is sought are (a) erroneous instructions by the Court as to the measure of damages for the administrator, and (b), assuming the correctness of the Court's instructions, the fact that the jury found generally for the plaintiffs but awarded no damages to the administrator.

The instructions to the jury as to damages recoverable by the administrator are too long to quote in full, but what the Court said was, in substance, that the jury might find a verdict for the economic value of the boy's life from the time he became 21 years of age until his death according to ordinary human expectancy; and economic value was defined as "the present value of the net result remaining after his personal expenses are deducted from his income or earnings." The jury were instructed to ascertain first "the gross amount of such prospective income or earnings, then * * * deduct therefrom what the deceased would have had to lay out as a producer to render the service or to acquire the money that he might be expected to produce, computing such expenses according to his station in life, his means and personal habits, and

then to reduce the net result so obtained to its present value."

It may be noted in passing that the Court did not submit to the jury items either of pain and suffering or of medical, hospital and funeral expenses. No complaint is made of the charge in this respect. The boy died before he reached the hospital, having had no conscious moment after being struck, and the parents bore whatever expenses there were.

The question of the correct measure of damages in an action by an administrator for death by negligence is one of exceptional difficulty. It has been passed on in several opinions by the Courts of Common Pleas of Pennsylvania, but there is no Supreme Court decision upon that point, since the enactment of the existing statutes under which this suit was brought.

We may start with Judge Heiligman's statement in Gannon v. Lawler, 34 Pa. Dist. & Co. R. 571, 576, to the effect that the present statutory law is that if no suit is brought by one who dies of injuries sustained through negligence of another, the relatives (in this case parents) of the decedent may sue the wrongdoer for the pecuniary loss which the death caused them, and the personal representatives of the decedent may sue the defendant upon whatever cause of action the decedent might have sued in his lifetime.

The parents' rights stem from Sec. 19 of the Act of April 15, 1851, P.L. 669, 12 P. S.Pa. § 1601. That section provided that "Whenever death shall be occasioned by unlawful violence or negligence, and no suit for damages be brought by the party injured during his or her life, the widow of any such deceased, or if there be no widow, the personal representatives may maintain an action for and recover damages for the death thus occasioned." The part of this section which gives the widow the right to sue was legislation of a class generally called death acts.

The right given to the personal representatives (in case there was no widow) by the section quoted was entirely different, and statutes creating similar rights are known as survival statutes. This particular survival provision kept alive, not an action brought by the decedent, but the cause of action, the decedent having brought no suit. Sec. 18 of the Act of 1851 provided for the survival of the law suit.

The survival clause of Sec. 19 of the Act of 1851 did not remain long in force. By the Act of April 26, 1855, 12 P.S.Pa. § 1602, it was abolished, and there was no statute in Pennsylvania providing for the survival of the cause of action, as distinguished from the action, between 1855 and 1917. The effect of the Act of 1855 was to make Sec. 19 of the Act of 1851 a true death statute, the class of beneficiaries being enlarged to include parents and children as well as the widow. This section, with subsequent amendments, still is in force and is the statutory authorization for the parents to appear as plaintiffs here. As is the case with all of the death acts, their recovery is limited to their own pecuniary loss and has no connection with what the deceased may have suffered or his estate lost.

In 1917 there was an attempt to codify the survival legislation, by the Fiduciaries Act of June 7, 1917, P.L. 447, Secs. 35 (a) and 35 (b), 20 P.S.Pa. §§ 771, 772. Sec. 35 (b) was held unconstitutional because of defective title, but was subsequently reenacted by the Act of July 2, 1937, P.L. 2755, Sec. 2, 20 P.S. § 772.

Sec. 35 (a) of the Fiduciaries Act had to do with the survival of an action brought by the decedent in his lifetime. It was a substantial reenactment of Sec. 18 of the Act of 1851, and it has no bearing upon the present case except so far as decisions under it may indicate views of the Supreme Court as to the proper measure of damages in suits in which personal representatives of the decedent are plaintiffs.

Sec. 35 (b) (now the Act of 1937) provided that "Executors or administrators shall have power, either alone or jointly with other plaintiffs, to commence and prosecute all actions * * * which the decedent whom they represent might have commenced and prosecuted * * *." Its effect is that the cause of action which the decedent had and might have sued upon during his lifetime now survives his death. It thus creates new rights, nonexistent in Pennsylvania since 1855, and requires the courts to find a proper measure of damages in suits brought under it.

It is plain enough that the personal representatives suing under this Act may recover for pain and suffering undergone by the deceased and also any money which he may have spent or indebtedness which

he or his estate may have incurred for hospital, medical and funeral expenses, provided, of course, he was the one who was legally liable for such expenses. The difficulty arises when we come to consider what, if anything, may be recoverd for the value of the deceased's life based upon his normal expectancy—an item closely related to loss of earning power under one view, and an absolute valuation of the life itself, unconnected with earnings or possible accumulations, under another.

Three Common Pleas decisions (Gannon v. Lawler, supra; Findeisen v. Friedman, 35 Pa. Dist. & Co. R. 523; and Glaesser v. Evans, 36 Pa. Dist. & Co. R. 68) limit the damages recoverable for the loss of the life to actual loss of time and earning power for the fixed period between the injury and the death. This is done mainly because of the danger of a duplication of damages which might arise if the administrator should be allowed to recover anything for loss of earnings or earning power for the period after the death. Obviously, it was not intended, by the survival statutes, to take away any rights granted to the relatives by the death acts, and so, in this case, the parents can recover for loss of the boy's probable earnings, at least until he reaches the age of 21. If, in addition to this, there should be added a recovery by the administrator of the economic value of the life, the defendant, whose liability is for compensatory damages only, might be paying a verdict which included much more than that. I thought that I was avoiding this result by limiting the administrator's recovery to the pecuniary value of the boy's life from 21 years on, because the parents do not ordinarily have an expectation of support after the child comes of age, but after carefully reconsidering the whole matter, I am inclined to think that I was wrong and that the rule of Gannon v. Lawler is correct. If the deceased had not been a minor and there had been a widow who was suing in her own right, instead of the parents, duplication of damages could not be avoided without adopting the rule of the Gannon case without modification, because the widow's right of recovery extends to damages for the decedent's entire life expectancy. It is not necessary, however, to make a definite ruling upon this point, because, if there was error, it allowed the jury to give the administrator more than he may rightly be entitled to. Natural-

ly, in view of the verdict, the defendant is not complaining of the instructions.

The plaintiff administrator's contention, however, goes much farther than the instructions. It is that the Court should have instructed the jury to find the absolute value of the life lost—that is to fix a figure which represents what the decedent's life was worth to him, regardless of possible earnings or accumulations or of any of the purely economic elements to which I limited the jury in the present case. He concedes that such a measure is difficult to apply, but says that it is by no means preposterous, since damages for pain and suffering and for loss of reputation are awarded pretty largely at the jury's guess without limitation by pecuniary standards or economic rules.

The one decision which seems to give substance to the plaintiff's contention is Pennsylvania R. Co. v. McCloskey's Administrator, 23 Pa. 526. In that case the court below suggested to the jury that in estimating the damages "they might compute them by the probable accumulations of a man of such age, habits, health, and pursuits, as the deceased, during what would probably have been his lifetime; and then added: 'I think this would be a fair measure of damages in this case; but if the jury can find a better rule than the one suggested, they are at liberty to adopt it.'" It was an action for a negligent killing, brought by the administrator of the decedent, childless and unmarried, who had brought no action during his lifetime. With regard to the effect of the decision, I can only point out the following considerations:

First, it was a suit which arose during the brief period from 1851 to 1855 when the "death action" clause of Sec. 19 of the former Act gave a right of recovery to the widow only, and the survival clause came into effect only when there was no widow. Thus, so far as the survival of the *cause* of action was concerned (that is, where the decedent had brought no action during his lifetime), there could be no possible danger of a duplication of damages by permitting the jury to put some kind of value on the life itself. The parents or children had no right of action, and if there had been a widow the administrator would have been barred. Had the decedent brought an action in his lifetime and died leaving a widow, the action being continued by the administrator under Sec. 18 of the Act, the

Court might have had the question of possible duplication presented to it. Whether this would have affected its views it is, of course, not possible to say. At any rate, the entire scheme of the legislation upon this point has been revised, and the danger of the duplication of damages is so clear under the present law that an intention to avoid it may well be found, where it may not have appeared in the statutory law of the 1850's.

Second, the decision is a very old one, and my attention has been called to no modern decision which supports what appears to be the rule laid down by it—a rule which, if I understand it correctly, requires the jury to put a value upon a human life, divorced from all pecuniary elements. It will be noted that the Supreme Court in the McCloskey case expressly disapproved of the part of the judge's charge in which he told the jury that they might consider the probable accumulations of the decedent. Of course, probable accumulations are not quite the same as the economic value of the life, because there might be some question raised in the jury's mind as to the thrift and saving habits of the decedent, but there is not very much difference. Apparently the Supreme Court felt that an instruction that "if the jury can find a better rule than the one suggested, they are at liberty to adopt it" saved the charge. It does not seem possible that the Court today would support a charge to the jury which told them to find any value for a human life which they chose to find, upon any basis which they might choose to adopt. Yet that is really the effect of the opinion of the Court in the McCloskey case.

Until the Supreme Court of the State has spoken and has laid down a rule applicable to the now existing statutory law of Pennsylvania upon the question, I am not prepared to follow the McCloskey decision and prefer to adopt the reasoning of the Common Pleas cases under the more recent statutes. I therefore hold that the instructions given to the jury relating to the measure of damages in the suit by the administrator, if erroneous, erred in favor of the plaintiff and consequently do not furnish any reason for a new trial.

Under the rule laid down in Gannon v. Lawler, the answer of the jury that no damages were awarded to the administrator was almost necessary. The death was practically instantaneous. There was no loss of earnings and the expenses were allowed the parents, who paid them.

The motion for a new trial is denied.

Rule 49 (b), Rules of Civil Procedure, 28 U.S.C.A. following section 723c, provides that "When the answers [to interrogatories] are consistent with each other but one or more is inconsistent with the general verdict, the court may direct the entry of judgment in accordance with the answers, nowithstanding the general verdict * * *." In this case a verdict for the plaintiff administrator would clearly be inconsistent with the answer to the interrogatory to the effect that no damages were awarded to him. The Court therefore directs that judgment be entered in favor of the plaintiff parents in the amount of $1,710, and in favor of the defendant as against the plaintiff administrator.