Marjorie A. PORTER, as personal representative of the Estate of John James Porter, Deceased, Plaintiff-Appellee,

v.

J. Presper ECKERT, Defendant-Appellee,

Lauderdale Cruisair, Inc., Defendant-Appellant,

Marine Development Corporation, Defendant-Appellant-Appellee.

No. 72-1345

Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

Aug. 22, 1972.

* Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5 Cir., 1970, 431 F.2d 409.

**1308**

Fred C. Davant, Miami, Fla., for Marine Development.

Robert D. McIntosh, Ft. Lauderdale, Fla., for Lauderdale Cruisair.

Quinton, Lieb & Aurell, Paul C. Huck, Miami, Fla., for Porter.

Walsh, Dolan & Krupnick, Gerald M. Walsh, Ft. Lauderdale, Fla., for Eckert.

Before THORNBERRY, COLEMAN and INGRAHAM, Circuit Judges.

INGRAHAM, Circuit Judge:

This Jones Act action was brought by Marjorie A. Porter (Mrs. Porter) as personal representative of the estate of her deceased husband, John James Porter, against various defendants. Mrs. Porter sued J. Presper Eckert as the owner of the vessel on which her husband was employed at the time of his death, Lauderdale Cruisair, Inc., the installer of the air conditioning unit which caused the electrocution of her husband, and Marine Development Corporation (MDC), the manufacturer of the unit. Mrs. Porter's suit was based on the unseaworthiness of the vessel, negligence and breach of warranty in the manufacture and installation of the defective air conditioning unit. By the time of trial all of the defendants had filed cross claims for indemnity against each other. The jury returned a verdict in favor of Mrs. Porter against all defendants, but found in favor of Eckert and Lauderdale Cruisair on their respective cross claims for indemnity against MDC. MDC then moved, pursuant to F.R.Civ.P. 49(b), for the entry of a judgment consistent with the jury's answer to the interrogatories. This motion was granted. The district court vacated Lauderdale Cruisair's judgment against MDC and entered a judgment notwithstanding the verdict. Lauderdale Cruisair appeals this decision. MDC appeals the judgments of Mrs. Porter and Eckert which were rendered against it. We affirm.

The deceased, John James Porter, was employed as a seaman on the vessel "Miss Laura" owned by Eckert. He was electrocuted when he came into contact with an electrically "hot" air conditioning unit located on the vessel. As a result of defective insulation in the sealed compressor within the unit, there was an electrical leakage which caused the

exterior of the unit to be "hot". When Lauderdale Cruisair installed the unit, it failed to ground the unit by a connecting wire to the main ground of the vessel, and this is the omission on which its liability is based.

The thrust of MDC's assertions on appeal go to the sufficiency of the evidence. MDC moved for a directed verdict at the close of Mrs. Porter's case. The court denied this motion with reference to the breach of warranty allegations, and MDC then proceeded to offer evidence in its own behalf. However, MDC did not move for a directed verdict at the close of all the evidence, nor did it move for judgment notwithstanding the verdict. We stated in Stockton v. Altman, 432 F.2d 946, 950 (5th Cir., 1970), that:

> "It is well settled, as we held in Delchamps, Inc. v. Borkin, 5th Cir. 1970, 429 F.2d 417, that in the absence of a motion for judgment notwithstanding the verdict made at trial, this Court cannot examine the evidence for sufficiency."

See generally 5 A. J. Moore, Federal Practice ¶ 50.05 at 2341 and ¶ 50.12, at 2365 (2nd Ed. 1971). MDC's reliance on Traders & General Ins. Co. v. Mallitz, 315 F.2d 171 (5th Cir., 1963), as an exception to this rule is misplaced because there the judgment was entered on special verdicts, while in the case at hand the judgment was based on general verdicts. MDC's attempt to characterize the verdict here as special is a mistake. Compare F.R.C.P. 49(a) with 49(b).[1]

To avoid resting our decision solely on this procedural basis, we have examined the record and concluded that there was ample evidence from which reasonable men (and women) could conclude that the unit was defective when it left the manufacturer's plant and that this defect was a proximate cause of the deceased's death.[2]

The standard used for testing the sufficiency of the evidence is from Boeing Company v. Shipman, 411 F.2d 365, 370 (5th Cir., 1969), and is a somewhat higher standard than that used in FELA and Jones Act cases. See Planters Mfg. Co. v. Protection Mut. Ins. Co., 380 F.2d 869 (5th Cir., 1967). To satisfy the Planters standard there would have to be "a complete absence of probative facts to support" the jury's conclusion. That has certainly not been shown in the instant case, and thus regardless of which standard is used there was sufficient evidence to take the case to the jury.

---

1. The general verdicts of the jury were all similar to the following example:

"We, the jury find in favor of the plaintiff, Marjorie A. Porter, as widow of John James Porter, deceased, and against the defendant, J. Presper Eckert on the question of unseaworthiness and assess her damages in the sum of $60,000.

"So say we all.

Foreman"

2. We agree that a showing that the product was defective when it left the manufacturer's control is an essential element of a plaintiff's case. But, the recognition of that premise does not help MDC. As one expert stated:

"Q. After your examination of the unit and your observation of the disassembling of the unit, and your arrival in your own opinion of what the problem, the short, was, do you have an opinion as to the cause of the electrical short?

A. It is my opinion that some damage was done to that particular terminal at some point in the assembly of the unit.

There is no explanation for any damage being done to an internal terminal subsequent to the assembly of the unit.

And since I was unable to observe this damage on the exterior surface of that terminal before the unit was disassembled, it led me to the conclusion [SR.214] that the damage which caused the trouble had originated on the inside of the terminal, which would be explainable only on the basis of some damage during the assembly of the unit."

MDC has overlooked the important distinction between proof of the cause of the defect, which is not an element of a plaintiff's case, and proof that the defect existed when the product left the manufacturer's control.

■ MDC also asserts that since the jury found the "Miss Laura" unseaworthy, its owner, J. Presper Eckert, cannot recover against it on his cross claim for indemnity. The trial court, at the close of all the evidence, granted Eckert's motion to dismiss Mrs. Porter's negligence claim against him. Thus, even though the vessel was found to be unseaworthy, Eckert's liability flowing from this finding is a liability without fault and is not a result of his negligence. The trial court, therefore, properly entered judgment for Eckert on his indemnity claim. *See* Tri-State Oil Tool Industries, Inc. v. Delta Marine Drilling Co., 410 F.2d 178, 186 (5th Cir., 1969), and Hussein v. Isthmian Lines, Inc., 405 F.2d 946 (5th Cir., 1968).

■ Lauderdale Cruisair has appealed the judgment notwithstanding the verdict entered against it on its cross claim for indemnity against MDC. In answer to interrogatories the jury found that the "Miss Laura" was unseaworthy because of a defective air conditioner and that this defective condition was caused both by a defect in the unit and by the lack of proper grounding of the unit. (The failure to ground was a negligent omission to act by Lauderdale Cruisair.) In spite of these answers to the interrogatories, the jury gave a general verdict for Lauderdale Cruisair on its cross claim for indemnity against MDC. The trial court felt that the answers to the interrogatories, although internally consistent, were not consistent with the general verdict. We agree and therefore affirm the court's decision to enter a judgment notwithstanding the verdict in favor of MDC. *See* F.R.C.P. 49(b).[3]

The judgment of the district court is affirmed.

3. This rule provides:
"The court may submit to the jury, together with appropriate forms for a general verdict, written interrogatories upon one or more issues of fact the decision of which is necessary to a verdict. The court shall give such explanation or instruction as may be necessary to enable the jury both to make answers to the interrogatories and to render a general verdict, and the court shall direct the jury both to make written answers and to render a general verdict. When the general verdict and the answers are harmonious, the appropriate judgment upon the verdict and answers shall be entered pursuant to Rule 58. When the answers are consistent with each other but one or more is inconsistent with the general verdict, judgment may be entered pursuant to Rule 58 in accordance with the answers, notwithstanding the general verdict, or the court may return the jury for further consideration of its answers and verdict or may order a new trial. When the answers are inconsistent with each other and one or more is likewise inconsistent with the general verdict, judgment shall not be entered, but the court shall return the jury for further consideration of its answers and verdict or shall order a new trial."