JOHN C. HARLESS, *Appellee*

*v.*

FIRST NATIONAL BANK IN FAIRMONT, *etc.*,

*Appellant*

*and*

AUBREY B. WILSON, *Defendant Below*

(No. 15088)

JOHN C. HARLESS, *Appellee*

*v.*

FIRST NATIONAL BANK IN FAIRMONT, *etc.*,

*Appellee*

*and*

AUBREY B. WILSON, *Appellant*

(No. 15089)

JOHN C. HARLESS, *Appellant*

*v.*

FIRST NATIONAL BANK IN FAIRMONT, *etc.*,

*Appellee*

*and*

AUBREY B. WILSON, *Appellee*

(No. 15090)

Decided March 23, 1982.

*Solomon & Solomon and David L. Solomon* for John C. Harless.

*Rose, Southern & Padden and Herschel Rose* for First Nat. Bank in Fairmont, etc.

*Steptoe & Johnson and Herbert G. Underwood* for Aubrey B. Wilson.

MILLER, CHIEF JUSTICE:

This is a sequel to our original opinion in *Harless v. First National Bank in Fairmont*, 162 W. Va. 116, 246 S.E.2d 270 (1978), where we answered a certified question that an at will employee who is discharged could bring, in certain circumstances, an action against his employer.[1] This cause of action has often been characterized as a claim for retaliatory or wrongful discharge.[2]

---

[1] The Syllabus of *Harless, supra,* states:
"The rule that an employer has an absolute right to discharge an at will employee must be tempered by the principle that where the employer's motivation for the discharge is to contravene some substantial public policy principle, then the employer may be liable to the employee for damages occasioned by this discharge."

[2] *Tameny v. Atlantic Richfield Co.*, 27 Cal. 3d 167, 164 Cal. Rptr. 839, 610 P.2d 1330 (1980) (wrongful discharge); *Sheets v. Teddy's Frosted*

The main issues before us now are the correctness of the damages awarded to the plaintiff, John C. Harless, against his former employer, First National Bank in Fairmont, and supervisor, Aubrey B. Wilson, in the amount of $62,500 compensatory damages and $62,500 punitive damages. The case was given to the jury on three separate theories of recovery: (1) the action of retaliatory discharge; (2) the tort of outrageous conduct; and, (3) the claim of blackballing and blacklisting. The trial court submitted special interrogatories to the jury on the damage issues.[3]

---

*Foods, Inc.,* 179 Conn. 471, 427 A.2d 385 (1980) (wrongful discharge); *Kelsay v. Motorola, Inc.,* 74 Ill.2d 172, 384 N.E.2d 353 (1978) (wrongful discharge); *Frampton v. Central Indiana Gas Co.,* 260 Ind. 249, 297 N.E.2d 425, 63 A.L.R.3d 973 (1973) (retaliatory discharge); *Sventko v. Kroger Co.,* 69 Mich. App. 644, 245 N.W.2d 151 (1976) (retaliatory discharge); *Jones v. Keogh,* 137 Vt. 562, 409 A.2d 581 (1979) (retaliatory discharge); Summers, *Individual Protection Against Unjust Dismissal,* 62 Va. L. Rev. 481 (1976); Note, *Guidelines for a Public Policy Exception to the Employment At-Will Rule: The Wrongful Discharge Tort,* 13 Conn. L. Rev. 617 (1981); Note, *A Common Law Action for the Abusively Discharged Employee,* 26 Hastings L. Rev. 1435 (1975); Note, *Kelsay v. Motorola, Inc.–A Tort Action for Retaliatory Discharge upon Filing Workmen's Compensation Claims,* 12 John Marshall J. Prac. & Proc. 659 (1979); Note, *Defining Public Policy Torts in At Will Dismissals,* 34 Stanford L. Rev. 153 (1981); Comment, *Intentional Employer Torts and Worker's Compensation: A Legal Morass,* 11 Pac. L. J. 187 (1979).

[3] The special interrogatories and answers were:

"SPECIAL INTERROGATORIES TO
THE JURY

"Having found in favor of the plaintiff and against both defendants, we answer the following interrogatories propounded by the Court.

"1. For retaliatory discharge, we assess compensatory damages in the amount of $20,000 against the defendant First National Bank, and $5000 against the defendant Aubrey B. Wilson.

"a. As to punitive damages for retaliatory discharge, we assess $20,000 against the defendant First National Bank, and $5000 against the defendant Aubrey B. Wilson.

"2. For outrageous and intentional conduct causing emotional distress, we assess compensatory damages in the amount of

Upon the defendant's motion for a new trial, the trial court held that there was insufficient evidence to support a recovery for blackballing or blacklisting and, therefore, removed this item of damages which amounted to $25,000 from the jury verdict. The trial judge also struck the $5,000 compensatory and $5,000 punitive damages awarded against Wilson on the retaliatory discharge theory in that Wilson did not directly discharge the plaintiff. Also removed was the award of $5,000 compensatory and $5,000 punitive damages against the Bank for the tort of outrageous conduct as the court found such a cause of action was not supported by the evidence.

The trial court upheld the award of $20,000 compensatory and $20,000 punitive damages rendered against Wilson on the tort of outrageous conduct claim. The trial court also sustained the jury verdict award of $40,000 against the Bank ($20,000 compensatory and $20,000 punitive damages on the retaliatory discharge theory). Thus, the jury's general verdict of $125,000 was reduced by the trial court to $80,000. From this order, the parties appeal.[4]

---

$5000 against the defendant First National Bank, and $20,000 against the defendant Aubrey B. Wilson.

"a. As to punitive damages for outrageous and intentional conduct causing emotional distress, we assess $5000 against the defendant First National Bank, and $20,000 against defendant Aubrey B. Wilson.

"3. For blackballing or blacklisting, we assess compensatory damages in the amount of $0 against the defendant First National Bank, and $12,500 against the defendant Aubrey B. Wilson.

"a. As to punitive damage for blackballing or blacklisting, we assess $0 against the defendant First National Bank and $12,500 against defendant Aubrey B. Wilson.

"/s/     Donald F. Harris
"FOREMAN

"(NOTE: The sum of compensatory damages must equal the amount assessed as compensatory damages in the Verdict Form, and the sum of punitive damages, if any, must equal the amount assessed as punitive, if any, on the Verdict Form.)"

[4] Each of the parties filed appeals which we granted separately but consolidated for a single opinion because of the interrelated facts and issues.

## FACTS

The plaintiff was employed beginning in 1967 under an oral contract of employment with the First National Bank in Fairmont. As a result of his diligence and good service, he was rewarded by periodic salary increases and promotions and became the Office Manager of the Consumer Credit Department in 1971. The plaintiff testified that in 1968 he became aware that the Bank, in violation of state and federal consumer credit laws, had intentionally and illegally overcharged customers on prepayment of their installment loans and intentionally did not make proper rebates. After an incident of disagreement with Wilson, the plaintiff was suspended from employemnt for one week in June 1975. In September 1975, the plaintiff reported the illegal practices to a member of the Board of Directors of the Bank. Shortly thereafter, according to the plaintiff, Wilson ordered employees to dispose of certain Bank files that reflected the illegalities.

On October 1, 1975, the plaintiff was demoted from his position of Office Manager of the Consumer Credit Department in what he claims was an effort to embarrass and humiliate him. According to the plaintiff, the illegal practices continued. The plaintiff met on several occasions with a local attorney and a member of the Bank's Board of Directors concerning the alleged illegalities. In the Fall of 1976, the Board of Directors ordered a complete audit and investigation of the Consumer Credit Department, and as a result some refunds were made to the Bank's customers.

In November 1976, three events transpired. The plaintiff and Wilson appeared before a Bank committee investigating the matter where a director acknowledged that illegal practices had been found and that they would be stopped. An investigation of overcharging by the First National Bank in Fairmont was ordered by the Regional Administrator of National Banks at a meeting in Richmond, Virginia. The plaintiff was reinstated to his position as Office Manager of the Consumer Credit Department.

Up until December 1976 the plaintiff was holding a number of Consumer Credit Department files which he had retrieved from Bank wastebaskets. When requested by Bank officials to turn these files over, the plaintiff only turned over a few each day over a period of one week. On December 30, 1976, the plaintiff was summarily discharged from his employment at the Bank by the Executive Vice President, Patrick L. Shulte.[5]

The Bank in defending its action asserted five reasons for the plaintiff's dismissal: (1) sequestering confidential Bank files; (2) giving false and misleading information to regulatory authorities; (3) not getting along or making any effort to get along with Wilson; (4) not functioning properly in his position; and, (5) not getting along with other Bank employees. The plaintiff maintains that his discharge was solely because of his attempts to require the Bank to comply with federal and state laws.

We concur with the trial court that there were sufficient facts to carry the case to the jury on the retaliatory discharge action. We do not believe there existed sufficient facts to support recovery on the blackballing or blacklisting[6] or the tort of outrageous conduct actions.

---

[5] Shulte was included as one of the original defendants, but at the conclusion of the plaintiff's evidence the trial court dismissed him upon motion for failure to make out a *prima facie* case. This ruling is not contested on appeal.

[6] While the plaintiff claims there was evidence to support this cause of action in his brief, this point is not strenuously argued. The only evidence introduced was that after the suit had been filed and while the plaintiff was working for a bank in Morgantown, his supervisor, Mr. Jarrett, received a call from Wilson who advised him not to employ the plaintiff. This advice was not acted upon by the Morgantown bank. A cause of action must be based on facts that exist prior to the institution of the action. *Boggess v. Bartlett*, 72 W. Va. 377, 78 S.E. 241 (1913); 1 Am.Jur.2d *Actions* §87 (1962). For this reason, we do not address the substantive merits of a cause of action for blacklisting or blackballing. *See Kamara v. S. Livanos & Co.*, 97 F. Supp. 435 (S.D. N.Y. 1951); *Dick v. Northern Pac. Ry. Co.*, 86 Wash. 211, 150 P. 8 (1915); *Restatement of Torts* §766 (1939). Technically, "blackball" is a term applied to an unfavorable vote. 11 C.J.S. *Blackball* (Supp. 1981).

## SPECIAL INTERROGATORIES

The plaintiff argues that the trial court should not have altered the general verdict of $62,500 compensatory and $62,500 punitive damages rendered against the Bank and Wilson. We are cited cases standing for the proposition that a general verdict will stand if the plaintiff presents sufficient evidence to sustain at least one theory of recovery. *E.g., Greenwood Ranches, Inc. v. Skie Construction Co., Inc., et al.,* 629 F.2d 518 (8th Cir. 1980); *Berger v. Southern Pacific,* 144 Cal. App.2d 1, 300 P.2d 170 (1956); *Hayes v. Massachusetts Mutual Life Insurance Company,* 125 Ill. 626, 18 N.E. 322 (1888). The latter two of these cases, however, differ from the present case in that there were no special interrogatories used.

*Greenwood Ranches, Inc., supra,* is procedurally somewhat analogous to the present case. There the plaintiff farm corporation sued the installer, the designer, the pipe supplier and the pipe manufacturer of an irrigation system. Several causes of action were asserted, i.e. negligence, breach of contract and breach of warranty. The trial court utilized special verdicts under Rule 49 of the Federal Rules of Civil Procedure along with a general verdict, and the jury found special verdicts against three of the defendants. The verdict forms contained the separate amounts for each theory of recovery. The court concluded that:

> "Greenwood's [plaintiff's] causes of action are simply alternate theories for seeking the same relief. In this situation, a plaintiff is not entitled to a separate compensatory damage award under each legal theory. On the contrary, he is entitled only to one compensatory damage award if liability is found on any or all of the theories involved." *Greenwood Ranches, Inc.,* at 521. (Citations omitted)

Because the special verdicts had specified the degree of liability as to each of the three responsible defendants and the evidence was sufficient as to their liability, the court concluded it would remand the case for a reassessment of the damages only.

In the instant case, the trial court, without objection from any party, utilized what it termed "special interrogatories." Rule 49 of our Rules of Civil Procedure provide for special verdicts and interrogatories and is identical to Rule 49 of the Federal Rules of Civil Procedure. Special interrogatories and verdicts are a refinement of the provisions of W. Va. Code, 56-6-5.[7] While it is true that Rule 49 makes a distinction between special verdicts and special interrogatories, in practice there is a tendency for the two to overlap. Commentators discussing Rule 49(a) dealing with special verdicts use the terminology of "framing the question" and speak of "the trial judge's discretion to structure the special interrogatories." *5A Moore's Federal Practice*, 49-14 & 16 (1981); 9 Wright & Miller, *Federal Practice and Procedure: Civil* §492, *et seq.* (1971). Numerous cases dealing with special verdicts refer to them as special interrogatories. *See 5A Moore's Federal Practice*, 49-14, *et seq.* (1981).

In the present case, the special interrogatories which we have set out in note 3 should probably be labeled special verdicts since each of the defendants and theories of recovery are identified as well as the amounts of verdicts. Rule 49(a) may be interpreted as being designed

---

[7] W. Va. Code, 56-6-5, provides:

"Any court of record having jurisdiction of the trial of common-law actions may, in any case before it other than a chancery case, have an issue tried, or an inquiry of damages made, by a jury, and determine all questions concerning the legality of evidence and other matters of law which may arise. Upon the trial of any issue or issues by a jury, whether under this section or not, the court may, on motion of any party, direct the jury, in addition to rendering a general verdict, to render separate verdicts upon any one or more of the issues, or to find in writing upon particular questions of fact to be stated in writing. The action of the court upon such motions shall be subject to review as in other cases. Where any such separate verdict or special findings shall be inconsistent with the general verdict, the former shall control the latter, and the court shall give judgment accordingly."

Special interrogatories and verdicts have been part of our law since the formation of this State. Lugar & Silverstein, *West Virginia Rules*, 365-70 (1960).

for use with special verdicts only and a general verdict should not be used. In *Greenwood Ranches, Inc., supra,* the trial court, however, after acknowledging the special verdicts added them together to arrive at a general verdict.[8] We decline to make any detailed analysis of the proper procedural interpretation of Rule 49 in this case simply because none of the parties below made any objection to the procedure.

We therefore look to the substance of what has occurred. The trial court was confronted with three theories of recovery with damage claims involving both compensatory and punitive damages as against two defendants. The case presented novel and complex issues involving the facts, law and damages. The trial judge may well have had reservations as to whether the evidence supported some of the claims but with suitable caution he decided to permit the issues to go to the jury utilizing the special interrogatories or verdicts to ascertain the jury's finding on each of the liability theories and the damages.

As one legal commentator points out the purpose of Rule 49 is to enable the trial court to have a mechanism to permit a jury to separately consider differing claims and the liabilities of multiple parties. *5A Moore's Federal Practice,* 49-35 (1981). Certainly, with the advent of comparative contributory negligence in *Bradley v. Appalachian Power Co.,* 163 W. Va. 332, 256 S.E.2d 879 (1979), and comparative contribution under *Sitzes v. Anchor Motor Freight, Inc.,* __ W. Va. __, 289, S.E.2d 679 (1982), the use of Rule 49 will become more frequent.

Many courts have recognized that Rule 49 provides a proper vehicle to determine complex issues and requires that where the special verdicts or interrogatories are utilized, they may form a basis for altering a general verdict. *Porter v. Eckert,* 465 F.2d 1307 (5th Cir. 1972); *Elston v. Morgan,* 440 F.2d 47 (7th Cir. 1971); *McCormick v. Wildwood,* 439 F.Supp. 769 (D. N.J. 1977); *Conner v. Jeffes,*

---

[8] *Greenwood Ranches, Inc., supra,* made no attempt to sort through the procedural niceties of Rule 49 and in fact resolved the procedural question without reference to the rule.

67 F.R.D. 86 (M.D. Pa. 1975) *Voelkel v. Bennett,* 31 F.Supp. 506 (E.D. Pa. 1940); 9 Wright & Miller, *Federal Practice and Procedure: Civil* §514, *et seq.* (1971). We must, therefore, analyze the trial court's ruling in overturning the special verdicts and altering the general verdict.

## WILSON'S LIABILITY FOR RETALIATORY DISCHARGE

Although the jury concluded that Wilson was liable on the retaliatory discharge claim along with the Bank, the trial court set this finding aside on the theory that Wilson did not directly fire Harless on December 30, 1976. There was some testimony that the plaintiff had been earlier relieved of his duties at the Bank by Wilson on June 25, 1975. The plaintiff argues that the June 25 release was a firing although he admits he was reinstated at the end of a two-week period; Wilson contends it was not a firing but a suspension.

Whether Wilson actually fired the plaintiff, Harless, is not the critical point. In a retaliatory discharge case the person who does the actual firing has little to do with the underlying controversy.[9] The discharge serves to fix responsibility on the employer but this does not mean that another employee who has been the principal protagonist in obtaining the employee's discharge would not also be liable. Here, Wilson who was the plaintiff's immediate superior and directly involved on behalf of the Bank in the unlawful consumer practices, was hostile to the plaintiff's efforts to rectify the improper practices. The evidence shows that Wilson's views carried considerable weight with the Bank's management and contributed to the ultimate discharge of the plaintiff.

We have established in *Stanley v. Sewell Coal Co.,* ___ W. Va. ___, 285 S.E.2d 679 (1981); *Shanholtz v. Monongahela Power Co.,* ___ W. Va. ___, 270 S.E.2d 178 (1980); and *Harless, supra,* that a claim for retaliatory discharge is a tort cause of action. The fact that Wilson did not directly

---

[9] This is the situation in the present case. Shulte, the Executive Vice President, actually fired the plaintiff; yet, he was found not personally liable.

fire the plaintiff does not relieve him of liability. Wilson's actions were within the scope of his employment. In *Musgrove v. Hickory Inn, Inc.,* ___ W. Va. ___, 281 S.E.2d 499 (1981), we discussed at some length an employee's personal liability and stated in Syllabus Point 3:

> "An agent or employee can be held personally liable for his own torts against third parties and this personal liability is independent of his agency or employee relationship. Of course, if he is acting within the scope of his employment, then his principal or employer may also be held liable."

In *State ex rel. Bumgarner v. Sims,* 139 W. Va. 92, 111, 79 S.E.2d 277, 289 (1953), we characterized the relationship of master and servant as similar to joint tortfeasors:

> "The relation of master and servant in those cases, in which the doctrine of *respondeat superior* applies, is joint, and the parties should be regarded as though they were joint tort-feasors. *Wills v. Montfair Gas Coal Co.,* 97 W.Va. 475, 125 S.E. 367. In some respects, however, the relation may be regarded as joint and several."

We have also recognized in Syllabus Point 4 of *Humphrey v. Virginian Railway Co.,* 132 W. Va. 250, 54 S.E.2d 204 (1948), that an employer might have liability independent of his employee if such liability arose from acts of the employer or another employee:

> "Where, in an action for personal injuries, plaintiff seeks to recover damages against a master and his employee, liability of the master is not predicated solely upon the employee's negligence, but upon the negligence of another employee, or that of the employer himself, a verdict against the employer and exonerating the employee is not inconsistent."

In *Wills v. Montfair Gas Coal Co.,* 97 W. Va. 476, 478, 125 S.E. 367, 368 (1924), suit for a wrongful death was filed against the coal company and its superintendent by reason of employing the deceased under-age miner and we said:

"If the tortious act be jointly done, or severally done though for a similar purpose and at the same time, without concert of action, the actors are joint tort-feasors. Ordinarily both parties guilty of concurrent negligent acts may be jointed in the action, even though they had no common purpose, and there was no concert of action. *Johnson v. Chapman,* 43 W. Va. 641, 28 S. E. 744."

We have traditionally recognized in tort cases that joint tortfeasors need not have the same degree of liability or participation of fault in order to be held liable to the injured plaintiff. *E.g., Metro v. Smith,* 146 W. Va. 983, 124 S.E.2d 460 (1962); *Reilley v. Byard,* 146 W. Va. 292, 119 S.E.2d 650 (1961); *Sigmon v. Mundy,* 125 W. Va. 591, 25 S.E.2d 636 (1943); *Hutcherson v. Slate,* 105 W. Va. 184, 142 S.E. 444 (1928). Consequently, under the foregoing law, we believe the trial court erred in holding that Wilson could not be found liable for the retaliatory discharge. His supervisory position over the plaintiff coupled with the evidence that directly linked him as an adversary in the central controversy in which the plaintiff was involved at the Bank was sufficient to support the jury's finding of liability.

## EMOTIONAL DISTRESS FOR RETALIATORY DISCHARGE

The defendants contend that the trial court erred in permitting the plaintiff to recover for emotional distress as a part of his compensatory damages in his cause of action for a retaliatory discharge. At trial, plaintiff claimed that he had lost wages in the amount of $8,500 from the date of his firing until he was able to obtain employment at another bank.

Plaintiff testified that as a result of the firing he suffered emotional distress by way of humiliation and lost self-confidence and trust. He was unable to properly eat and sleep and had to take medication for his nervous condition and depression. His wife corroborated this condition and indicated that after the firing he isolated himself from his family and friends and was extremely depressed and listless.

The law regarding the measure of damages that may be recovered for the tort of retaliatory discharge is rather sparse. Most courts have merely addressed the issue of whether such a cause of action exists in their jurisdiction because the case was dismissed in the lower court or certified to them to determine if such a cause of action was recognized. There has been recognition of compensatory damages by way of wage loss. *E.g., Sheets, supra; Palmater v. International Harvester Co.*, 85 Ill.2d 124, 421 N.E.2d 876 (1981); *Kelsay, supra;*[10] *Pierce v. Ortho Pharmaceutical Corp.*, 84 N.J. 58, 417 A.2d 505 (1980);[11] *Nees v. Hocks*, 272 Ore. 210, 536 P.2d 512 (1975). In *Smith v. Atlas Off-Shore Boat Service, Inc.*, 653 F.2d 1057 (5th Cir. 1981), the court sanctioned a cause of action for retaliatory discharge where the injured plaintiff was fired because he exercised his right to file a maritime suit against his employer. The court without any extended analysis of the damage law permitted him to recover compensatory damages in the forms of wage loss and mental anguish but refused to award punitive damages.

Some analogy can be provided in cases involving unlawful terminations under the Age Discrimination in Employment Act "ADEA," 29 U.S.C. §§621-34, which has a rather general damage provision in 29 U.S.C. §626(b).[12]

---

[10] In *Palmater, supra,* and *Kelsay, supra,* an award was given for wage loss but the court rejected an award of punitive damages because the defendant was not aware of the existence of the cause of action of retaliatory discharge at the time he fired the plaintiff. The court indicated that punitive damages might be available in future retaliatory discharge actions.

[11] In *Pierce, supra,* the New Jersey Court after recognizing that the discharged employee "may maintain a cause of action in contract or tort or both. . . ." (84 N.J. at 72, 417 A.2d at 512), went on to recognize that in tort actions punitive damages can be awarded from improper conduct.

[12] The pertinent portion of 29 U.S.C. §626(b) provides:
"Amounts owing to a person as a result of a violation of this chapter shall be deemed to be unpaid minimum wages or unpaid overtime compensation for purposes of sections 216 and 217 of this title, *Provided,* That liquidated damages shall be payable only in cases of willful violations of this chapter. In any action brought to enforce this chapter the court shall have jurisdiction

The federal courts have uniformly permitted as compensatory damages the plaintiff's wage loss and this is not an issue in the present case.[13] Some courts have permitted recovery for emotional distress resulting from the unlawful discharge.[14] The several Circuit Courts of Appeal that have addressed this question however have declined to permit emotional distress or pain and suffering awards perhaps in part because of the Act's provision for liquidated or punitive damages for a willful violation. *Vazquez v. Eastern Air Lines, Inc.*, 579 F.2d 107 (1st Cir. 1978); *Rogers v. Exxon Research & Engineering Co.*, 550 F.2d 834 (3rd Cir. 1977), *cert. denied*, 434 U.S. 1022, 54 L.Ed.2d 770, 98 S.Ct. 749 (1978); *Slatin v. Stanford Research Institute*, 590 F.2d 1292 (4th Cir. 1979); *Dean v. American Sec. Ins. Co.*, 559 F.2d 1036 (5th Cir. 1977), *cert. denied*, 434 U.S. 1066, 55 L.Ed.2d 767, 98 S.Ct. 1243 (1978).

---

to grant such legal or equitable relief as may be appropriate to effectuate the purposes of this chapter, including without limitation judgments compelling employment, reinstatement or promotion, or enforcing the liability for amounts deemed to be unpaid minimum wages or unpaid overtime compensation under this section." ·

[13] Generally, wage loss is determined by offsetting amounts received from other employment with the employer having the right to mitigate his damages by showing that the employee did not exercise reasonable diligence in finding other work. *E.g., Equal Employment Opportunity Commission v. Sandia Corp.*, 639 F.2d 600 (10th Cir. 1980); *Sias v. City Demonstration Agency*, 588 F.2d 692 (9th Cir. 1978); *Sprogis v. United Airlines, Inc.*, 517 F.2d 387 (7th Cir. 1975); *Sparks v. Griffith*, 460 F.2d 433 (5th Cir. 1972); *Hegler v. Board of Education*, 447 F.2d 1078 (8th Cir. 1971).

[14] This component is also referred to as pain and suffering. *E.g., Flynn v. Morgan Guaranty Trust Company of New York*, 463 F.Supp. 676 (E.D. N.Y. 1979); *Morton v. Sheboygan Memorial Hospital*, 458 F.Supp. 804 (E.D. Wis. 1978); *Gifford v. B.D. Diagnostics*, 458 F.Supp. 462 (N.D. Ohio 1978); *Buchholz v. Symons Mfg., Co.*, 445 F.Supp. 706 (E.D. Wis. 1978); *Coates v. National Cash Register Company*, 433 F.Supp. 655 (W.D. Va. 1977); *Combes v. Griffin Television, Inc.*, 421 F.Supp. 841 F.Supp. 841 (W.D. Okla. 1976); *Bertrand v. Orkin Exterminating Co.*, 419 F.Supp. 1123 (N.D. Ill. 1976). The analogy has been drawn to awarding emotional distress damages to cases brought under Titles VII and VIII of the Civil Rights Acts of 1964 and 1978. *E.g., Jeanty v. McKey & Pogue, Inc.*, 496 F.2d 1119 (7th Cir. 1974).

*Cf. Kelly v. American Standard, Inc.*, 640 F.2d 974 (9th Cir. 1981) (permitting emotional distress under state law). The above courts have formulated a rather liberal test for willful violation. *Wehr v. Burroughs Corp.*, 619 F.2d 276 (3rd Cir. 1980); *Kelly, supra.*[15] Most of the foregoing cases make no detailed analysis of the underlying reasons for permitting the various classes of damages and this is probably due to their concern with interpreting the statutory language.

We have earlier pointed out that a cause of action for retaliatory discharge is a tort and we must therefore utilize our tort damage law in determining the extent of recovery. The right of a plaintiff to recover compensatory damages for emotional distress arising from the wrongful acts of another has been traditonally recognized in *Montelone v. Co-Operative Transit Co.*, 128 W. Va. 340, 347, 36 S.E.2d 475, 478 (1945), where we set out three categories of recovery:

> "First, those mental disturbances that accompany or follow an actual physical injury caused by impact upon the occurrence of the tort; second, where there is no impact and no physical injury at the time, but a physical injury afterwards results as the causal effect of a nervous shock which in turn was the proximate result of the defendant's wrong; and third, where there was no impact and no physical injury caused by the defendant's wrong, but an emotional or mental disturbance is shown to have been the result of the defendant's intentional or wanton wrongful act. In any of the foregoing classifications we believe that the plain weight of authority sustains a recovery."

---

[15] An example of such a conclusion is:
"We conclude that the standard expressed by the Third Circuit in *Wehr* will best effectuate the purposes of ADEA, and hold that an ADEA plaintiff who establishes a knowing and voluntary violation of the Act is entitled to liquidated damages under 29 U.S.C. §§216(b) and 626(b)." *Kelly* at 980.
*See generally* Smith & Leggette, *Recent Issues in Litigation Under the Age Discrimination in Employment Act*, 41 Ohio St. L.J. 349, 366-69 (1980).

As noted in *Montelone*, the right to recover emotional distress in the absence of some physical injury or a subsequently developed physical injury is ordinarily predicated on some intentional wrong of the defendant. We have cases where emotional distress recovery has been permitted where the underlying cause of action involved an intentional tort. *E.g.*, *Sprouse v. Clay Communications*, 158 W. Va. 427, 211 S.E.2d 674 (1975) (libel action); *Addair v. Huffman*, 156 W. Va. 592, 195 S.E.2d 739 (1973) (wrongful suggestee execution); *Sutherland v. Kroger Company*, 144 W. Va. 673, 110 S.E.2d 716 (1959) (illegal search); *Toler v. Cassinelli*, 129 W. Va. 591, 41 S.E.2d 672 (1946) (wrongful ejection); *Nees v. Julian Goldman Stores, Inc.*, 109 W. Va. 329, 154 S.E. 769 (1930) (assault); *Lambert v. Brewster*, 97 W. Va. 124, 125 S.E. 244 (1924) (assault); *Jones v. Hebdo*, 88 W. Va. 386, 106 S.E. 898 (1921) (false imprisonment).

Conceptually, it is difficult to draw a precise line that will serve to accurately define those torts which are deemed "intentional" and, therefore, permit a recovery for emotional distress in the absence of any physical injury. The clearest categories are those of the traditional nonphysical torts such as false imprisonment, libel and slander, malicious prosecution and wrongful attachment or debt collecting processes. Prosser, *Torts* §12 (1972 ed.); Annot., 87 A.L.R.3d 201 (1978); Annot., 64 A.L.R.2d 100 (1959). In these situations, the severity of the underlying act is utilized to support the reasonableness of the claim for emotional distress.

Another more difficult category is where the claim for emotional distress arises from a negligent act which produces no physical injury but causes emotional distress. In this area courts are more reluctant to permit recovery for emotional distress particularly where the plaintiff was outside the zone of any physical danger arising from the negligent act and where there is no close relationship with the victim. Annot., 94 A.L.R.3d 486 (1979).

We believe that the tort of retaliatory discharge carries with it a sufficient indicia of intent, thus, damages for

emotional distress may be recovered as a part of the compensatory damages. The essence of the cause of action is the wrongful and deliberate discharge of the employee who chooses to exercise some substantial public policy right. Some analogy exists to the case of *Toler v. Cassinelli*, 129 W. Va. 591, 598, 41 S.E. 672, 677-78 (1946), where we recognized that a tenant who had been wrongfully locked out of her apartment could recover damages for emotional distress resulting from humiliation and embarrassment arising from the incident:

> "The humiliation and mental pain may be considered as an element of damages. *Chesapeake & Potomac Telephone Co. v. Carless*, 127 Va. 5, 102 S.E. 569. See 1 Sedgwick on Damages, Ninth Ed., Sections 42-43. Where unreasonable and wilful action by defendant inflicts indignity, humiliation and insult on plaintiff, resulting in mental pain and suffering, they are a just basis for compensatory damages. *Jones v. Hebdo*, 88 W.Va. 386, 106 S.E. 898. See *Johnson v. Norfolk & W. Railway Co.*, 82 W.Va. 692, 97 S.E. 189."

We are aware that a claim for emotional distress without any physical trauma may permit a jury to have a rather open-hand in the assessment of damages. Additionally, a jury may weigh the defendant's conduct in assessing the amount of damages and to this extent emotional distress damages may assume the cloak of punitive damages. These same arguments, of course, can be made with regard to an amount for pain and suffering attendant to a physical injury. Obviously, the jury's common sense plays a vital role in both areas and certainly by instruction the element of emotional distress may be defined to properly guide the jury's consideration.

Moreover, as discussed in the next section, we do not automatically accord a right of punitive damages in a retaliatory discharge case.[16]

---

[16] We previously noted that the Illinois and New Jersey Courts have expressly stated without any particular standard or discussion that punitive damages are available in a retaliatory discharge case. *Palmater, supra; Kelsay, supra; Pierce, supra.* In each case, the

## PUNITIVE DAMAGES FOR RETALIATORY DISCHARGE

The Bank challenges the correctness of punitive damages awarded against it on the retaliatory discharge theory. In Syllabus Point 1 of *O'Brien v. Snodgrass*, 123 W. Va. 483, 16 S.E.2d 621 (1941), we said:

> "Punitive or exemplary damages are such as, in a proper case, a jury may allow against the defendant by way of punishment for wilfulness, wantonness, malice, or other like aggravation of his wrong to the plaintiff, over and above full compensation for all injuries directly or indirectly resulting from such wrong."

*See also Addair, supra; Spencer v. Steinbrecher*, 152 W. Va. 490, 164 S.E.2d 710 (1968), *Ennis v. Brawley*, 129 W. Va. 621, 41 S.E.2d 680 (1946).

From a policy standpoint, we have recognized in *Hensley v. Erie Insurance Co.*, ___ W. Va. ___, 283 S.E.2d 227 (1981), that punitive damages serve several purposes. Among the primary ones are: (1) to punish the defendant; (2) to deter others from pursuing a similar course; and, (3) to provide additional compensation for the egregious conduct to which the plaintiff has been subjected.[17]

Controversy exists over the subject of punitive damages as some critics argue that such damages originally came about to enhance the plaintiff's recovery because of the undeveloped nature of tort damage law. These critics

court, however, decided to make the punitive damage award prospective only.

[17] In note 15 of *Hensley* at 233, we also said:

"Other reasons for punitive damages have been advanced. They encourage a plaintiff to bring an action where he might be discouraged by the cost of the action or by the inconvenience of a criminal proceeding. *Jolley v. Puregro Company*, 94 Idaho 702, 496 P.2d 939 (1972); *Walker v. Sheldon*, 10 N.Y.2d 401, 223 N.Y.S.2d 488, 179 N.E.2d 497 (1961). Punitive damages provide a substitute for personal revenge by the wronged party. *Woodard v. City Stores Company*, 334 A.2d 189, 191 (D.C. 1975); *Security Aluminum Window Manufacturing Corp. v. Lehman Associates, Inc.*, 108 N.J. Super 137, 260 A.2d 248 (1970); *Harris v. Burnside*, 261 S.C. 190, 196, 199 S.E.2d 65, 68 (1973)."

argue that to state the usual rubric that punitive damages are to punish the defendant overlooks the obvious fact that the plaintiff is receiving the additional money.[18]

The tort of retaliatory discharge was fashioned as an exception to the common law rule that an employer had an absolute right to discharge an at will employee. *Harless, supra*; Annot., 62 A.L.R.3d 271 (1975). This exception was drawn not to cover all at will firings but only those where it could be demonstrated that the discharge was in retaliation for the employee's exercising some substantial public policy right. The remedy afforded was not reinstatement but damages occasioned by the discharge. We have in the preceding portion of this opinion sanctioned as an element of recovery a claim for emotional distress.

Because there is a certain open-endedness in the limits of recovery for emotional distress in a retaliatory discharge claim, we decline to automatically allow a claim for punitive damages to be added to the damage picture. The recovery for emotional distress as well as other compensatory damages such as lost wages should adequately compensate the plaintiff. We do recognize that where the employer's conduct is wanton, willful or malicious punitive damages may be appropriate.[19]

The facts of this case do not demonstrate the type of wanton, willful or malicious conduct that traditionally authorizes the right to punitive damages. The mere existence of a retaliatory discharge will not automatically give rise to the right to punitive damages. The plaintiff must prove further egregious conduct on the part of the

---

[18] These arguments along with case and source materials are more fully developed by Mallor & Roberts in *Punitive Damages: Toward A Principled Approach,* 31 Hastings L. J. 639 (1980).

[19] Such a situation may arise where the employer circumlates false or malicious rumors about the employee before or after the discharge or engages in a concerted action of harrassment to induce the employee to quit or actively interfers with the employee's ability to find other employment. None of these factors exist in the present case.

employer. We, therefore, conclude that the trial court was incorrect in its post-trial ruling by not overturning the punitive damage award in regard to the retaliatory discharge theory.

## CLAIM OF OUTRAGEOUS CONDUCT

The plaintiff's theory of the tort of outrageous conduct related to the same events that make up the retaliatory discharge claim. The tort of outrageous conduct or intentional infliction of emotional distress permits the recovery of damages for emotional distress arising out of extreme and outrageous conduct intentionally or recklessly caused by the defendant as indicated in Section 46 of the *Restatement (Second) of Torts*:

> "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm."[20]

---

[20] The *Restatement* further defines the essential elements of this Tort as follows:

"d. *Extreme and outrageous conduct.* The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

\* \* \*

"j. *Severe emotional distress.* The rule stated in this Section applies only where the emotional distress has in fact resulted, and where it is severe. Emotional distress passes under various names, such as mental suffering, mental anguish, mental or nervous shock, or the like. It includes all highly unpleasant mental reactions, such as fright, horror, grief, shame, humilation, embarrassment, anger, chagrin, disappointment, worry, and nausea. It is only where it is extreme that the liability arises. Complete emotional tranquility is seldom attainable in this world, and some degree of transient and trivial emotional

A number of commentators have noted that the tort of outrage is merely an extension of the right to recover damages for emotional distress into areas involving nontraditional intentional torts:

> "It has gradually become recognized that there is no magic inherent in the name given to a tort, or in any arbitrary classification, and that the infliction of mental injury may be a cause of action in itself. Its limits are as yet ill defined, but it has been extended to its greatest length in the case of intentional acts of a flagrant character, whose enormity adds especial weight to the plaintiff's claim, and is in itself an important guarantee that the mental disturbance which follows is serious and not feigned." Prosser, *Law of Torts* §52 (1971).[21]

The Virginia court in *Womack v. Eldridge*, 215 Va. 338, 342, 210 S.E.2d 145, 148 (1974), has defined the tort of outrageous conduct as follows:

> "[A] cause of action will lie for emotional distress, unaccompanied by physical injury, provided four elements are shown: One, the wrongdoer's conduct was intentional or reckless. This element is satisfied where the wrongdoer had the specific purpose of inflicting emotional distress or where he intended his specific conduct and knew or should have known that emotional distress would likely result. Two, the conduct was outrageous

---

distress is a part of the price of living among people. The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it. The intensity and the duration of the distress are factors to be considered in determining its severity. Severe distress must be proved ...

"The distress must be reasonable and justified under the circumstances, ... "

[21] *See also* Morrison, *Outrage and Emotional Distress: New Directions in Tort Law*, 34 J. Mo. Bar. 269 (1978); Theis *The Intentional Infliction of Emotional Distress: A Need for Limits on Liability*, 27 DePaul L. Rev. 275 (1977); Note, *Torts Outrage: Liability for the Intentional Infliction of Mental and Emotional Harm*, 14 Wade Forest L. Rev. 305 (1978); Note, *Torts: An Analysis of Mental Distress as an Element of Damages and as a Basis of an Independent Cause of Action When Intentionally Caused*, 20 Washburn L. J. 106 (1980).

and intolerable in that it offends against the generally accepted standards of decency and morality. This requirement is aimed at limiting frivolous suits and avoiding litigation in situations where only bad manners and mere hurt feelings are involved. Three, there was a causal connection between the wrongdoer's conduct and the emotional distress. Four, the emotional distress was severe."

*See also Alcan v. Ambro Engineering, Inc.*, 2 Cal.3d 493, 86 Cal. Rptr. 88, 468 P.2d 216 (1970); *Newby v. Alto Rivera Apartments*, 60 Cal. App.3d 288, 131 Cal. Rptr. 547 (1976); *Public Finance Corp. v. Davis*, 66 Ill.2d 85, 4 Ill. Dec. 652, 360 N.E.2d 765 (1977); *Pogge v. Fullerton Lumber Company*, 277 N.W.2d 916 (Iowa 1979); *Meyer v. Nottger*, 241 N.W.2d 911 (Iowa 1976); *Harris v. Jones*, 281 Md. 560, 380 A.2d 611 (1977); *Agis v. Howard Johnson Co.*, 371 Mass. 140, 355 N.E.2d 315 (1976); Annot., 64 A.L.R.2d 100 (1959).

The Virginia Court's definition is patterned after Section 46 of the *Restatement (Second) of Torts* and reflects the hallmark of this tort which is intentional and outrageous conduct. As comment (d) to Section 46 of the *Restatement* suggests, the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community."

The tort of retaliatory discharge differs from the tort of outrageous conduct in several fundamental aspects. First, a retaliatory discharge begins with an employment relationship between the plaintiff and defendant. Second, the discharge is found actionable not because of any outrageous conduct on the part of the employer but because the discharge contravenes a substantial public policy right exercised by the employee.

On the other hand, a degree of congruency exists in the damages recoverable. We permit recovery for emotional distress arising from a retaliatory discharge which is the same type of injury that the tort of outrageous conduct is designed to cover. Courts have also permitted a recovery

of punitive damages on a claim for outrageous conduct. *E.g., Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265 (3rd Cir. 1979); *Agarwal v. Johnson*, 25 Cal. App.3d 932, 160 Cal. Rptr. 141, 603 P.2d 58 (1979); *Christian v. American Home Insurance*, 577 P.2d 899 (Okla. 1977); *Thomassen Lincoln-Mercury, Inc. v. Goldbaum*, 45 Md. App. 297, 413 A.2d 218 (1980).

As we have earlier pointed out, a claim for punitive damages may also be available in a retaliatory discharge claim if the defendant's conduct is sufficiently aggravated. In substance then the retaliatory discharge cause of action, depending on the facts, is sufficiently accommodating to include outrageous conduct such that there is no need to permit an independent cause of action for outrageous conduct in a retaliatory discharge case.[22]

It is generally accepted that there can only be one recovery of damages for one injury. This rule is summarized in 25 C.J.S. *Damages* at 629 (1966):

> "It is generally recognized that there can be only one recovery of damages for one wrong or injury. Double recovery of damages is not permitted; the law does not permit a double satisfaction for a single injury. A plaintiff may not recover damages twice for the same injury simply because he has two legal theories, . . . "

*See Myers v. Isthmian Lines, Inc.*, 282 F.2d 28 (1st Cir. 1960); *McCarthy v. American Eastern Corporation*, 175 F.2d 727 (3rd Cir. 1949); *Greenwood Ranches, Inc., supra*; *Crowder v. Gordon's Transport*, 419 F.2d 480 (8th Cir. 1969); *Reinach v. City, et al.*, 164 Cal. App.2d 763, 331 P.2d 1006 (1958); *Aldrich v. Beauregard*, 105 N.H. 330, 200 A.2d

---

[22] There may be situations where the plaintiff has not been discharged or his termination of employment cannot be fitted into a retaliatory discharge cause of action, yet a cause of action will fall within the tort of outrageous conduct as against his employer. *E.g., Agarwal, supra; Alcorn, supra; Harrison v. Loyal Protective Life Ins. Co.*, 396 N.E.2d 987 (Mass. 1979); *Contreras v. Crown Zellerbach Corp.*, 88 Wash.2d 735, 565 P.2d 1173 (1977). *See* Annot., 86 A.L.R.3d 454 (1978).

14 (1964); *Crockett v. Housing Authority*, 274 S.W.2d 187 (Tex. App. 1954).

In the present case, we do not find the conduct of the Bank or Wilson to have reached the level of outrageous conduct that would support a claim for the tort of outrage. Moreover, in this jurisdiction, a claim for the tort of outrageous conduct is duplicitous to a claim for retaliatory discharge. The damages are essentially the same under both claims since we recognize that if the employer's conduct is outrageous punitive damages may be recovered in a retaliatory discharge suit as well as compensatory damages including an award for emotional distress.

## RELIEF

The trial court utilizing the answers the jury made to the special interrogatories reduced the general verdict from $125,000 to $80,000. We conclude that the $20,000 punitive damages on the theory of retaliatory discharge against the Bank was not proper under the facts of this case and that Wilson who was assessed $5,000 in compensatory damages by the jury on the retaliatory discharge theory was erroneously removed from the case by the trial court. Thus, the corrected verdict is $25,000 against the Bank and Wilson on the retaliatory discharge action and the tort of outrageous conduct action is dismissed.

A drastic reduction of the jury verdict on damages has occurred in this case which substantially affects the plaintiff's right of recovery and it is possible that if the jury had only been given the issue of damages under a retaliatory discharge theory, more damages might have been awarded. We have remanded cases for a retrial on the damage issue alone where the liability issue has been settled. *E.g., Delong v. Albert,* 157 W. Va. 874, 205 S.E.2d 683 (1974); *Biddle v. Haddix,* 154 W. Va. 748, 179 S.E.2d 215 (1971); *Richmond v. Campbell,* 148 W. Va. 595, 136 S.E.2d 877 (1964).

We are not unmindful of the extensive record in this case and the fact that plaintiff is presently employed and

may not desire to relitigate the damage issue. We, therefore, accord the right of remittitur to the plaintiff on the basis that he may accept within forty-five days from the mandate of this Court a judgment of $25,000 together with interest thereon from the date of the jury verdict against the Bank and Wilson or the judgment will be set aside and he shall be entitled to a new trial on the issue of damages.

The case is therefore remanded to the Circuit Court of Marion County.

*Remanded.*