IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2024 Term

_____

No. 22-609

_____

FILED

April 11, 2024

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

JAY LONGERBEAM,

Plaintiff Below, Petitioner,

v.

SHEPHERD UNIVERSITY,

Defendant Below, Respondent.

_____

Appeal from the Circuit Court of Jefferson County
The Honorable Michael D. Lorensen, Judge
Civil Action No. 19-2020-C-52

REVERSED AND REMANDED
_____

AND

_____

No. 22-610

_____

DONALD BURACKER,

Plaintiff Below, Petitioner,

v.

SHEPHERD UNIVERSITY,

Defendant Below, Respondent.

---

Appeal from the Circuit Court of Jefferson County
The Honorable Michael D. Lorensen, Judge
Civil Action No. 19-2020-C-37

AFFIRMED, IN PART;
REVERSED, IN PART, AND REMANDED

---

Submitted:  February 6, 2024
Filed:  April 11, 2024

Christian J. Riddell, Esq.
THE RIDDELL LAW GROUP
Martinsburg, West Virginia
Counsel for Petitioners

Tracey B. Eberling, Esq.
STEPTOE & JOHNSON PLLC
Martinsburg, West Virginia
Counsel for Respondent

JUSTICE WOOTON delivered the Opinion of the Court.
JUSTICE BUNN, deeming herself disqualified, did not participate in the decision of this case.
JUDGE JASON A. WHARTON sitting by temporary assignment.

SYLLABUS BY THE COURT

1.    "A circuit court's entry of summary judgment is reviewed *de novo*." Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994).

2.    "In an action to redress an unlawful retaliatory discharge under the West Virginia Human Rights Act, W. Va. Code, 5-11-1, *et seq*., as amended, the burden is upon the complainant to prove by a preponderance of the evidence (1) that the complainant engaged in protected activity, (2) that complainant's employer was aware of the protected activities, (3) that complainant was subsequently discharged and (absent other evidence tending to establish a retaliatory motivation) (4) that complainant's discharge followed his or her protected activities within such period of time that the court can infer retaliatory motivation." Syl. Pt. 4, *Frank's Shoe Store v. W. Va. Hum. Rts. Comm'n*, 179 W. Va. 53, 365 S.E.2d 251 (1986).

3.    "Although the plaintiff has the ultimate burden of proving elements of the claim of discrimination by a preponderance of the evidence, the showing the plaintiff must make as to the elements of the *prima facie* case in order to defeat a motion for summary judgment is *de minimis*. In determining whether the plaintiff has met the *de minimis* initial burden of showing circumstances giving rise to an inference of discrimination, the function of the circuit court on a summary judgment motion is to determine whether the proffered admissible evidence shows circumstances that would be sufficient to permit a rational finder of fact to infer a discriminatory motive. It is not the

i

province of the circuit court itself to decide what inferences should be drawn." Syl. Pt. 4, *Hanlon v. Chambers*, 195 W. Va. 99, 464 S.E.2d 741 (1995).

4. "In an action to redress unlawful discriminatory practices in employment . . . the burden is upon the complainant to prove by a preponderance of the evidence a prima facie case of discrimination[.] . . . If the complainant is successful in creating this rebuttable presumption of discrimination, the burden then shifts to the respondent to offer some legitimate and nondiscriminatory reason for the rejection. Should the respondent succeed in rebutting the presumption of discrimination, then the complainant has the opportunity to prove by a preponderance of the evidence that the reasons offered by the respondent were merely a pretext for the unlawful discrimination." Syl. Pt. 3, *Shepherdstown Volunteer Fire Dep't v. State ex rel. State of W. Va. Hum. Rts. Comm'n*, 172 W. Va. 627, 309 S.E.2d 342 (1983).

WOOTON, Justice:

Petitioners/plaintiffs below, Jay Longerbeam ("Longerbeam") and Donald Buracker ("Buracker") (collectively "petitioners"), appeal the Circuit Court of Jefferson County's grant of summary judgment to respondent Shepherd University ("Shepherd") in their respective employment cases. Petitioners were campus police officers at Shepherd who were purportedly terminated due to "misconduct" and "unprofessionalism" during two incidents in 2018 and 2019. Petitioners asserted a variety of claims for age and disability discrimination under the West Virginia Human Rights Act ("HRA"),[1] retaliation under the HRA, violation of the West Virginia Whistle-blower Law,[2] and common law "*Harless*"[3] wrongful discharge. The circuit court, finding no genuine issue of material fact as to the requisite elements of each claim, granted summary judgment against both petitioners on all claims asserted. We consolidated petitioners' appeals for consideration.

---

[1] *See* W. Va. Code §§ 5-11-1 to -20. We note that effective February 8, 2024, the HRA was recodified and is now found at West Virginia Code §§ 16B-17-1 to -20. However, all citations herein refer to the HRA's original codification, which was in effect at the time of the underlying proceedings.

[2] *See* W. Va. Code §§ 6C-1-1 to -8.

[3] *See* Syl., *Harless v. First Nat'l Bank*, 162 W. Va. 116, 246 S.E.2d 270 (1978) ("The rule that an employer has an absolute right to discharge an at will employee must be tempered by the principle that where the employer's motivation for the discharge is to contravene some substantial public policy principle, then the employer may be liable to the employee for damages occasioned by this discharge.").

1

After careful review of the briefs of the parties, their oral arguments, the appendix record, and the applicable law, we find that, as to petitioner Buracker's disability discrimination claim, the circuit court committed no error and therefore affirm its ruling as to that cause of action. However, as to petitioners' whistle-blower and *Harless* claims and Buracker's HRA retaliation claim, we find that the circuit court erred in finding no genuine issues of material fact and therefore reverse those aspects of the court's respective June 21, 2022, orders and remand each case for further proceedings.[4]

## I.     FACTS AND PROCEDURAL HISTORY

Petitioners, both of whom are over forty years old, were employed as full-time campus police officers at Shepherd at the time of their termination in May 2019. Prior to termination petitioner Buracker had worked at Shepherd for almost twenty-nine years as a part-time campus police officer and had been placed into a full-time position in June 2018; petitioner Longerbeam had worked at Shepherd for just over two years prior to termination. Both were terminated simultaneously in May 2019, purportedly as a result of the two incidents described below. Neither had previously been disciplined or received a negative performance review.

---

[4] Neither petitioner appealed the circuit court's ruling as to their HRA age discrimination claims and Longerbeam did not appeal the court's ruling as to his HRA retaliation claim. We therefore do not address or disturb those aspects of the orders on appeal.

2

A.    ALLEGED ACTS OF "MISCONDUCT" AND "UNPROFESSIONALISM"

The first incident occurred on October 7, 2018, when petitioners made a warrantless, nonconsensual entry into a student's dorm room in a campus residence hall. After having received prior calls about a loud party in the dorm, they returned to find obviously intoxicated, underage students loitering in a stairway landing; petitioners also observed alcoholic beverage containers in the hallway outside the dorm room. When petitioners attempted to enter a student tried to block their entry; Longerbeam told him to allow them to enter or he would strike him with his flashlight. Upon entry they discovered additional underage students—many of whom were student-athletes—drinking; they conducted breath tests and issued citations for underage drinking. In petitioners' official written narrative of the incident Buracker wrote that the officers administered preliminary breath tests ("PBTs") and "then" entered the dorm room. However, it appears undisputed that the PBTs were administered *after* entry; Buracker maintains this was an inadvertent drafting error. This inconsistency, along with review of footage from petitioners' body cameras, ultimately led Shepherd to contend that petitioners offered "misleading information" as to the event and engaged in "misconduct," i.e., the "warrantless, nonconsensual entry[.]"

The second incident occurred on January 6, 2019 and involved some of the same student-athletes. The students were pulled over for a broken headlight and, upon smelling marijuana, petitioners searched the vehicle and cited the driver for DUI (drugs)

3

and an occupant for permitting DUI.  Although Shepherd officials conceded the stop and arrest were both lawful, petitioners were accused of "targeting" the student-athletes and engaging in "unprofessionalism" for making them stand outside in the cold during the stop and being less lenient than in other similar traffic stops.[5]

Vice President of Student Affairs Holly Frye—Shepherd's organizational head of the campus police department—testified that after the October incident she was informed that three sets of parents had contacted attorneys who sent her "information" in support of their position that the October dorm entry was "improper."  Ms. Frye further testified that after the January traffic stop Shepherd began receiving additional "pressure" from the parents of the involved students, prompting Shepherd to undertake a closer investigation of petitioners' conduct as to both incidents.  On April 11, 2019, Chief McAvoy and Ms. Frye met with petitioners for a so-called "*Garrity* hearing"[6] regarding the two incidents; on April 23, 2019, they followed up with a letter to petitioners outlining allegations of "[m]isconduct" and "[u]nprofessionalism" stemming from the incidents.[7]

---

[5] During his testimony, former Shepherd Campus Police Chief John McAvoy contrasted a New Year's Eve traffic stop where the car was not impounded, no arrest made, no sobriety test administered, but the individual readily conceded to smoking marijuana.

[6] A *Garrity* hearing, named for *Garrity v. New Jersey*, 385 U.S. 493 (1967), allows the interviewee to answer questions with immunity from the answers being used against him in criminal proceedings.

[7] In addition to the specific October and January incidents, the letter cites "[u]nprofessionalism in [petitioners'] general conduct and interactions" with other officers, employees, and students and an "inability" to conform their "conduct and demeanor" to the "Community Policing philosophy and expectations."  *See* note 9 *infra*.

Petitioners were afforded a pretermination hearing presided over by Shepherd's Human Resources Director Dr. Marie DeWalt, who found no "substantial evidence or cause" to contradict the investigatory findings. On May 2, 2019, Shepherd President Dr. Mary Hendrix terminated petitioners by letter citing the reasons outlined in the April 23, 2019, letter and discussed during the *Garrity* hearing.

During discovery, Chief McAvoy, Ms. Frye, and Dr. Hendrix were questioned about the basis for petitioners' termination. Chief McAvoy testified that he believed the October dorm entry to be "unlawful" because the report was "falsified" relative to the timing of the PBTs; he conceded however that the report did not state that probable cause for entry was based solely on the PBTs.[8] He further testified that petitioners escalated the situation beyond what was necessary, and that Buracker "threatened" and "harassed" the student-athletes, specifying that he was "generally abusive" and threatened to call the student-athletes' coaches. Ms. Frye, however, testified more definitively that petitioners were terminated because they lacked probable cause for the dorm entry, but conceded that she did not have law enforcement expertise to inform her use of the term "probable cause." Dr. Hendrix testified that petitioners were terminated because their entry into the dorm room was nonconsensual, irrespective of whether they technically had probable cause for entry. Regarding this incident, Dr. Hendrix testified that "[what] we

---

[8] Chief McAvoy further testified that he believed that petitioners "coached" witnesses regarding their description of physical contact between Longerbeam and one of the students. He was also critical of petitioners' conduct relative to certain of the students jumping from the dorm room window.

5

would've like to have seen happen . . . you have to use patience, these are teenagers . . . knocking on the door, announcing yourselves and then proceeding . . . would've been better than barging in."[9]

B.     PETITIONERS' CAUSES OF ACTION AND EVIDENCE AT SUMMARY JUDGMENT

After termination, petitioners filed the underlying actions alleging that the reasons cited by Shepherd for their discharges were pretextual and that their discharge and other conduct by Shepherd was motivated by discrimination and retaliation based on a variety of protected statuses and activity, as more fully discussed below. In their complaints, petitioners asserted causes of action for age discrimination and retaliation in violation of the HRA, violation of the West Virginia Whistle-blower Law, and discharge in contravention of public policy pursuant to *Harless*. Buracker also asserted a claim of disability discrimination under the HRA based on his diabetes.

In addition to their wrongful termination, petitioners also allege that they suffered ongoing retaliation throughout their tenure in the form of disparate treatment. Specifically, petitioners allege they were continually assigned less favorable duties and held to enhanced responsibilities and standards not required of other officers. Petitioners

---

[9] Shepherd officials explained that the university is committed to a "community policing" philosophy which is premised upon establishing relationships with the students as opposed to "municipal" policing. The philosophy was described as entailing an "instructional" and "kinder, gentler" approach of obtaining an outcome rather than "treating students like criminals up front[.]" The interim Chief described it as "forging a relationship" with the students such that the police department is more "approachable."

claim that, unlike other officers, they were required to inspect and maintain police vehicles, use a body camera and issue a report on every contact, arrive for work on time, and participate in certain job duties.[10] More generally, petitioners claim that other officers engaged in misconduct and were not disciplined—much less terminated.[11] Petitioners alleged that their termination and these acts of reprisal were actionable under the following theories.

---

[10] Buracker offered other anecdotal evidence of what he claims was retaliatory disparate treatment, to which Shepherd provided rebuttal evidence. He claims that other officers were given more overtime than he was; Shepherd introduced an unrebutted affidavit demonstrating that he had been paid for more overtime than any other officer. He further claims that other officers were not required to be sworn and certified as law enforcement officers. Shepherd introduced evidence that upon Buracker notifying his superiors that certain officers had not been sworn, it was corrected. Buracker further claims that other officers were not required to sign an employment letter prior to beginning their employment. Shepherd notes that Buracker identifies no other officers who were hired as the result of a successful grievance, which precipitated his employment letter.

Finally, Buracker also claims he was "denied his seniority" because his unit number did not reflect his seniority and he was entitled to statutory longevity pay. Shepherd explains that longevity pay is governed by statute and that his prior part-time service was not at a level which would entitle him to the pay. Notably, the circuit court ruled that petitioner's affidavit regarding his entitlement to longevity pay "does create a dispute of material fact as [sic] his entitlement to the benefit."

[11] Two particular incidents cited by Buracker allegedly involved an officer's use of a taser against a mentally challenged individual and an officer's threat to shoot a dog— neither of which resulted in termination.

7

C.    AGE-RELATED DISCRIMINATION AND RETALIATION UNDER THE HRA

Buracker alleges that his termination and disparate treatment were, in part, acts of age-related discrimination[12] and retaliation for a claim of age discrimination[13] he made during a successful 2016 non-selection grievance.  In 2016, while Buracker was working in a part-time campus officer position, Shepherd posted a full-time position for which Buracker applied.  That posting included an educational requirement that Buracker did not meet; however, Shepherd's hiring policy permitted decisionmakers to consider experience in lieu of the educational requirement.  Buracker had been working part-time in the same job category as the posted full-time position for approximately twenty-nine years, yet the position was offered to a non-employee applicant who had the required degree but only one year of experience.  Upon grieving Shepherd's refusal to offer him the position, the West Virginia Public Employee's Grievance Board determined that Shepherd's refusal to apply Buracker's years of experience in the same position in lieu of

---

[12] West Virginia Code § 5-11-9(1) (2016) makes it unlawful "[f]or any employer to discriminate against an individual with respect to compensation, hire, tenure, terms, conditions or privileges of employment[.]"  West Virginia Code § 5-11-3(h) (1998) defines "discriminate" as to "exclude from, or fail or refuse to extend to, a person equal opportunities because of race, religion, color, national origin, ancestry, sex, age, blindness, disability or familial status[.]"

[13] "W. Va. Code 5-11-9(7)(C) (1992), prohibits an employer or other person from retaliating against any individual for expressing opposition to a practice that he or she reasonably and in good faith believes violates the provisions of the West Virginia Human Rights Act."  Syl. Pt. 11, *Hanlon v. Chambers*, 195 W. Va. 99, 464 S.E.2d 741 (1995).

the educational requirement was arbitrary and capricious. The Grievance Board ordered that Buracker be awarded backpay and offered a full-time position.

During the course of that grievance Buracker asserted that he was not hired due to his age. During discovery below, Buracker produced a newspaper article in which Chief McAvoy praised the selected applicant and his familiarity with "technology and social media" as an "asset when dealing with college students[.]" The article states that "[b]ecause of his age and experiences at Shepherd" Chief McAvoy remarked that the selected applicant would be able to "'put himself in their shoes.'"[14] Buracker further testified to an alleged remark by Chief McAvoy, in reference to an older officer, to the effect of "those are the guys we need to replace." Buracker testified that after assuming the full-time position as ordered by the Grievance Board, Chief McAvoy remarked that he was "one of [Buracker's] adversaries."[15]

---

[14] Although the Grievance Board made note of this allegation, the decision indicated that age discrimination had not been considered in its determination because Buracker "abandoned" this argument by failing to address it in his post-hearing submissions. Shepherd makes much of the fact that the Grievance Board's decision was not based on any discrimination by Shepherd and Buracker's "abandon[ment]" of the claim in that proceeding. However, irrespective of whether Buracker fully pursued or was successful with his claim of discrimination in his grievance, there is no dispute that Buracker did in fact make such an allegation and that Shepherd was aware of it. *See* Syl. Pt. 6, *Conrad v. ARA Szabo*, 198 W. Va. 362, 480 S.E.2d 801 (1996).

[15] In addition to the foregoing evidence, at summary judgment Buracker also offered *unsworn* statements in support of his claim that there was a general plot to "get Buracker" including statements from two officers from the Shepherdstown Police Department. One (continued . . .)

D.       DISABILITY DISCRIMINATION UNDER THE HRA

In addition to age discrimination and retaliation for his claim of age discrimination under the HRA, Buracker alleges his disparate treatment and termination were acts of discrimination based on his disability, i.e., diabetes. Buracker claims that his diabetes requires him to urinate frequently, causing occasional brief work disruptions to emergently attend to this need; however, he denied that this affects his ability to perform the essential functions of his job. On one occasion Buracker apparently left his body camera on while urinating and testified that he was "chastised" by his superiors for doing so. He contends this was raised during his *Garrity* hearing regarding the dorm room entry and traffic stop but identifies no particular disciplinary action attributed to this event.

---

officer's statement indicates that Chief McAvoy told the officer to keep his colleague away from Buracker so he wouldn't be "caught up in something" and that "the Buracker situation would resolve itself in the near future." Another officer indicated that Shepherdstown Mayor Jim Auxer, who is a Shepherd athletic booster, twice told him to "keep an eye on Buracker" and "report any indiscretions." Although this statement is likewise unsworn, in his deposition Mayor Auxer conceded he may have "said something in the context to that[.]" Buracker also produced texts with his immediate supervisor less than a month after he was hired stating "[t]hey are looking for ammo and I refuse to give them any!"

We agree with Shepherd that the unsworn statements are not competent evidence with which petitioners may defeat summary judgment and do not consider the unsworn statements in our de novo review.

10

E.    WHISTLE-BLOWER RETALIATION

Petitioners further claim that their termination and the alleged intervening instances of disparate treatment and reprisal are related to their protected whistle-blowing activities in violation of the West Virginia Whistle-blower Law.[16] Petitioners primarily focus their arguments on two occurrences:  1) their expression of concern about a "deal" between Shepherd and a magistrate establishing an "extra-judicial procedure" wherein Shepherd students were given alternative dispositions for criminal matters purportedly without a panoply of legal protections afforded criminal defendants (the "magistrate court arrangement"); and 2) an October 2018 complaint filed by Buracker with the West Virginia Ethics Commission against a fellow officer for personal use of a police vehicle.[17]

As to the magistrate court arrangement, petitioners contend that Shepherd had a "deal" with a Jefferson County magistrate wherein students brought before the

---

[16] West Virginia Code § 6C-1-3 (2020) provides that "[n]o employer may discharge, threaten, or otherwise discriminate or retaliate against an employee . . . because the employee[] . . . makes a good faith report, or is about to report, verbally or in writing, to the employer or appropriate authority, an instance of wrongdoing or waste."

[17] Longerbeam also references a list of complaints, as documented in a memo, which he offered during a "morale" or "climate" meeting with human resources on February 6, 2019, as further evidence of his own whistle-blowing.  The memo contains common workplace complaints about communication, accountability, and organizational issues. Shepherd indicates that this meeting was precipitated by numerous complaints about Buracker's conduct.

Buracker further identifies the age discrimination claims he advanced in his 2016 grievance as an additional act of whistle-blowing; the circuit court did not address this in its summary judgment order, nor does Shepherd on appeal.

11

magistrate, upon being identified as Shepherd students and before any sort of process or plea, would automatically be given community service and advised that upon completion, the complaint would be dismissed. Longerbeam claims that he first learned of this "deal" in December 2017 when he issued a citation to a student-athlete. He testified that at that time he expressed his discomfort with the process to an assistant prosecuting attorney, noting specifically that this arrangement prevented the victim from being heard and the defendant students "weren't given really their due process" and "their rights were being violated." He testified that he also expressed concern regarding ex parte communications between the magistrate and the student-athlete's parent, as well as with Ms. Frye. He testified that he later discussed the "deal" in April 2018 with Chief McAvoy and Ms. Frye, suggesting that this process may prevent students from receiving the necessary intervention. Longerbeam testified that, contemporaneous with this discussion, Chief McAvoy suggested that he write "campus citations" in lieu of "state" citations and Ms. Frye emphasized the availability of informal campus processes in lieu of citations.

Buracker testified that he also complained of the magistrate court arrangement via email to his immediate supervisor David Kelvington, with a copy to Chief McAvoy, in December 2018. In the email, Buracker stated that Shepherd

> directly involves itself and interferes directly and indirectly with Criminal Prosecution of its students, including encouraging its officers not to make arrests at all or enforcement [sic] certain laws. These students don't have their individual **Due Process Rights** afforded when they go to Magistrate Court . . . [because] they are given community service **automatically** without **a right to trial, right to call**

**witnesses, right to plead not guilty, [r]ight to pled [sic] guilty and pay fines and costs, right to have an attorney present,** and without any **consideration of prior criminal offenses**. They get a promise as a student of Shepherd [] that a non student that committed the exact crime at the same location just simply does not get. . . .

This is all done . . . with [Shepherd's] direct involvement[] and without a prosecutor['s] involvement. This improper action has been admitted to by both past and present prosecutors. . . . We took an [sic] sworn oath of office to enforce all laws, not just some or the ones that we feel better serve our purpose.

Buracker testified that students raised questions about this process, complaining that some students were permitted to simply plead guilty and pay a small fine, while others were required to do community service, and still others suffered no consequences at all.

As to the ethics complaint, it appears undisputed that in October 2018, Buracker filed a complaint with the West Virginia Ethics Commission against fellow officer John Brown for personal use of a police vehicle to pick up his child, allegedly with the permission of his supervisor. That ethics complaint apparently resulted in a requirement of restitution by Officer Brown.[18]

---

[18] Longerbeam initially maintained that being listed as a witness to this complaint served to render him a whistle-blower as to this incident as well. While it is unclear whether Longerbeam gave testimony in the ethics matter, it appears he is no longer claiming this as a basis of his own whistle-blower claim.

F.    *HARLESS* WRONGFUL DISCHARGE

Finally, petitioners state an additional cause of action for discharge in contravention of a substantial public policy, i.e., a *Harless* claim. Petitioners primarily identify their HRA and whistle-blower allegations as the "substantial public policy" upon which their *Harless* claim is based. Petitioners also assert an additional basis for their *Harless* claim, alleging that Shepherd discharged them for refusing "to allow [students] to break the law with impunity."[19] Petitioners contend that it is a substantial public policy of this State that its laws be enforced by law enforcement and that their discharge was in contravention of this policy.

G.    THE CIRCUIT COURT'S ORDERS AND ISSUES ON APPEAL

Shortly after the complaint was filed Shepherd moved to dismiss on a variety of grounds. The circuit court granted the motion but set the dismissal aside upon petitioners' motion pursuant to West Virginia Rule of Civil Procedure 59(e) and 60(b)(6), in which they argued that the dismissal was premised upon matters outside of the pleadings. The circuit court agreed and granted ninety days of discovery before it would convert the

---

[19] Longerbeam testified to a conversation with Chief McAvoy wherein Chief McAvoy stated that "we know that students are gonna drink, sometimes you gotta look the other way." Petitioners also described being instructed not to tow vehicles from fire lanes or write citations on roadways surrounding and leading into campus, despite having jurisdiction to do so. Buracker testified that he believes Mayor Auxer "regularly intercede[s]" with the prosecutions of students, citing an incident where the Mayor asked him to "go easy on" one of the students involved in the October incident, which interaction Buracker recorded with his body camera.

14

motions to Rule 56 motions; however, approximately one year elapsed before Shepherd simply refiled their motions pursuant to Rule 56, following what appears to be substantial discovery.

The circuit court ultimately granted summary judgment to Shepherd as to all of petitioners' claims; the specific findings and bases for the circuit court's award of summary judgment are set forth in greater detail below.  Generally, however, the circuit court concluded that neither petitioner had established a prima facie case to support his various causes of action.  In addition to this finding, the circuit court further concluded that "Shepherd terminated [petitioners'] employment for a legitimate business reason" and that these reasons were not pretextual.  In regard to petitioners' allegations of pretext, the circuit court concluded that "[t]he legality of [petitioners'] actions is not evidence of pretext[]" and that "[t]his case is not about whether the conduct of the two offers [sic] could withstand a legal challenge in criminal court"—in regard to the dorm room entry and traffic stop.

During the course of the underlying proceedings and/or this appeal, petitioners appear to have expressly or implicitly abandoned their HRA age discrimination claims and Longerbeam has abandoned his retaliation claim under the HRA; their assignments of error concern only the residual claims.  *See* note 4 *supra*.  Therefore, we address only the circuit court's grant of summary judgment as to the remaining claims: Buracker's HRA retaliation claim, Buracker's HRA disability discrimination claim, petitioners' whistle-blower claims, and their *Harless* claims.

## II.  STANDARD OF REVIEW

As is well-established, "[a] circuit court's entry of summary judgment is reviewed *de novo*." Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994). More specifically, as pertains to summary judgment the Court "'must view the evidence presented through the prism of the substantive evidentiary burden.'" *Williams v. Precision Coil, Inc*., 194 W. Va. 52, 62, 459 S.E.2d 329, 339 (1995) (quoting *Anderson v. Liberty Lobby, Inc*., 477 U. S. 242, 254 (1986)).  That evidentiary burden in retaliation-based employment claims requires a prima facie showing as follows:

> [T]he burden is upon the complainant to prove by a preponderance of the evidence (1) that the complainant engaged in protected activity, (2) that complainant's employer was aware of the protected activities, (3) that complainant was subsequently discharged and (absent other evidence tending to establish a retaliatory motivation) (4) that complainant's discharge followed his or her protected activities within such period of time that the court can infer retaliatory motivation.

Syl. Pt. 4, in part, *Frank's Shoe Store v. W. Va. Human Rights Comm'n*, 179 W. Va. 53, 365 S.E.2d 251 (1986).  "[T]he showing the plaintiff must make as to the elements of the *prima facie* case [of retaliation or discrimination] in order to defeat a motion for summary judgment is *de minimis*."  Syl. Pt. 4, in part, *Hanlon v. Chambers*, 195 W. Va. 99, 464 S.E.2d 741 (1995).

Upon establishing a prima facie case, we have adopted a burden-shifting paradigm summarized as follows:

> If the complainant is successful in creating this rebuttable presumption of discrimination, the burden then shifts to the

16

respondent to offer some legitimate and nondiscriminatory reason for the rejection. Should the respondent succeed in rebutting the presumption of discrimination, then the complainant has the opportunity to prove by a preponderance of the evidence that the reasons offered by the respondent were merely a pretext for the unlawful discrimination.

Syl. Pt. 3, in part, *Shepherdstown Volunteer Fire Dep't v. State ex rel. State of W. Va. Hum. Rts. Comm'n*, 172 W. Va. 627, 309 S.E.2d 342 (1983); *see Taylor v. W. Va. Dept. of Health & Hum. Res.*, 237 W. Va. 549, 561, 788 S.E.2d 295, 307 (2016) ("[E]mployment claims— whether under the Human Rights Act, Whistle-Blower Law, or *Harless*—all employ effectively the same burden-shifting mechanism[.]"); W. Va. Code § 6C-1-4(b) and (c) (1988) (requiring employee to show by a preponderance of the evidence that he or she qualifies as a statutory "whistle-blower," upon which the burden shifts to the defendant to prove that the complained of action "occurred for separate and legitimate reasons, which are not merely pretexts"). Generally, "once a plaintiff's allegations and evidence create a *prima facie* case . . . the conflict between the plaintiff's evidence establishing a *prima facie* case and the employer's evidence of a nondiscriminatory reason reflects a question of fact to be resolved by the factfinder at trial." *Hanlon*, 195 W. Va. at 105-06, 464 S.E.2d at 747-48.

As with any review of summary judgment, "we must draw any permissible inference from the underlying facts in the most favorable light to the party opposing the motion." *Williams*, 194 W. Va. at 59, 459 S.E.2d at 336. "[I]f there is *any evidence* in the record from *any source* from which a reasonable inference can be drawn in favor of the

17

nonmoving party, summary judgment is improper." *Hanlon,* 195 W. Va. at 105, 464 S.E.2d at 747 (emphasis added). With these standards in mind, we proceed to the parties' arguments.[20]

## III. DISCUSSION

As indicated above, the circuit court's orders grant summary judgment to Shepherd by declaring that petitioners failed to establish a prima facie case as to each of their claims and there exists no genuine issue of material fact sufficient to evade summary judgment. Petitioners assign error to these conclusions and note that intermingled within these conclusions are discrete points of alleged error—some of which recur throughout the various causes of action—including the circuit court's consideration of temporal proximity and its handling of the burden-shifting paradigm relative to Shepherd's proffered reasons for termination and pretext. Shepherd's arguments in large part simply mirror the circuit court's orders and broadly characterize petitioners' evidence in resistance to summary judgment as "self-serving" and "unsupported."[21]

---

[20] By order entered August 12, 2022, this Court granted petitioners' motion to consolidate the instant appeals, over Shepherd's objection, and ordered the matter consolidated "for purposes of *briefing*, consideration, and decision." (Emphasis added). Nonetheless, Shepherd filed separate briefs in each matter in contravention of the Court's order. Counsel is cautioned not to disregard this Court's directives. A properly filed motion to exceed the page limitation would have been the appropriate recourse.

[21] We note that the orders on appeal were prepared by Shepherd's counsel, but "modified" to some unknown degree by the circuit court. Nevertheless, the orders borrow (continued . . .)

A.     TEMPORAL PROXIMITY

We begin with the circuit court's purportedly dispositive conclusion that petitioners' protected activity[22] and subsequent discharge lacked the requisite "temporal proximity."  The circuit court found absence of temporal proximity dispositive as to Buracker's HRA retaliation claim, and, in part, as to petitioners' respective whistle-blower claims.  More specifically, the circuit court found that because he was terminated nearly a year after he won his grievance, Buracker's allegation of age discrimination in that proceeding was too remote to support an inference of retaliation.  As to petitioners' whistle-blower claims, the circuit court similarly found that their May 2019 termination was "too removed in time" to be related to concerns expressed by Longerbeam about the magistrate court arrangement in April 2018 or the ethics complaint filed by Buracker in October 2018.  Petitioners argue that the circuit court erroneously failed to consider the intervening acts

---

heavily from Shepherd's summary judgment motions, rendering them "heavily partisan" and "over-reaching[.]"  *Taylor*, 237 W. Va. at 558, 788 S.E.2d at 304.  Like the order in *Taylor*, by so closely mimicking Shepherd's motions, the orders necessarily "consist[] entirely of [Shepherd's] version of the disputed facts and advocated inferences[.]"  *Id*.  As a result, we find it difficult—and unnecessary—to "parse out each flawed factual conclusion" in the orders on appeal where the rulings below "either failed to note the obvious factual dispute regarding the undercurrent of motivation central to this litigation or completely misapprehended the view of the disputed evidence it must take in determining summary judgment."  *Id*. at 562, 788 S.E.2d at 308.  Instead—as with the bulk of the respective orders on appeal—we find it sufficient to note the existence of genuine issues of material fact presented in the predominant theories of petitioners' case as gleaned from the parties' briefs.

[22] "'Protected activity' under the West Virginia Human Rights Act includes opposition to a practice that the plaintiff reasonably and in good faith believes violates the provisions of the Act."  *Conrad*, 198 W. Va. at 367, 480 S.E.2d at 806, syl. pt. 7, in part.  "Whistle-blowing" is likewise a "protected activity."

19

of reprisal which were more temporally proximate to their protected activity than their discharge.

We find that the circuit court mishandled the "temporal proximity" issue in two ways. First, we agree with petitioners that the court's orders appear to presume that petitioners' termination is the only retaliatory conduct at issue. However, petitioners do not challenge only their termination; rather, they allege "ongoing and continuous" acts of reprisal through disparate treatment regarding their job duties and responsibilities from the time of the triggering protected activity—whether complaints of age discrimination or whistle-blowing—until their discharge.

Secondly, and more importantly, the circuit court misconstrued the necessity of temporal proximity and the federal caselaw upon which it relied. Shepherd likewise mistakenly characterizes temporal proximity as "one of the four required elements" necessary to establish a prima facie case of retaliation, relying on federal caselaw discussing shorter periods of time between protected activity and termination.

However, the federal caselaw cited in the orders does not stand for the proposition that there must be close proximity between protected activity and termination to satisfy a prima facie level of causation in all instances. Rather, both that caselaw—and our own—make clear that *where there is no other evidence* connecting protected activity to an adverse employment action *other than* their temporal proximity, causation may be

20

inferred if that proximity is sufficiently close. *See Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 127 (4th Cir. 2021) ("[S]horter lapses of time similar to the three-month period at issue in the case before us are insufficient to infer a causal relationship *without other evidence of a causal link*." (Emphasis added)); *Woodruff v. Peters*, 482 F.3d 521, 529 (D.C. Cir. 2007) ("*Lacking a smoking gun from the FAA that would establish causation*, Woodruff asks us to infer a causal link from the temporal proximity between the protected events and the adverse actions." (Emphasis added)); *Pascual v. Lowe's Home Ctrs, Inc.*, 193 F. App'x 229, 233 (4th Cir. 2006) ("Generally speaking, however, the passage of time *alone* cannot provide proof of causation unless the 'temporal proximity between an employer's knowledge of protected activity and an adverse employment action' was 'very close.'" (Emphasis added)); *Causey v. Balog*, 162 F.3d 795, 803 (4th Cir. 1998) ("A thirteen month interval between the charge and termination is too long to establish causation *absent other evidence of retaliation*." (Emphasis added)).

In fact, our caselaw is even clearer on this point. As referenced above, our caselaw holds that for purposes of establishing a prima facie case of retaliation, temporal proximity is required only "[]absent other evidence tending to establish a retaliatory motivation[]":

> In an action to redress an unlawful retaliatory discharge under the West Virginia Human Rights Act, W. Va. Code, 5-11-1, *et seq*., as amended, the burden is upon the complainant to prove by a preponderance of the evidence (1) that the complainant engaged in protected activity, (2) that complainant's employer was aware of the protected activities, (3) that complainant was subsequently discharged *and (absent*

21

*other evidence tending to establish a retaliatory motivation)*
(4) that complainant's discharge followed his or her protected
activities within such period of time that the court can infer
retaliatory motivation.

*Frank's Shoe Store*, 179 W. Va. at 54, 365 S.E.2d at 252, syl. pt. 4 (emphasis added); *see*

*also Hanlon*, 195 W. Va. at 103, 464 S.E.2d at 745, syl. pt. 10; *accord Bailey v. Mayflower*

*Vehicles Sys., Inc.*, 218 W. Va. 273, 276, 624 S.E.2d 710, 713 (2005) (noting that

"'[b]ecause of the usual lack of *direct* evidence[] . . . . [p]roximity in time of the claim and

the firing is *relevant*[.]'" (quoting *Powell v. Wyo. Cablevision, Inc.*, 184 W. Va. 700, 704,

403 S.E.2d 717, 721 (1991)") (emphasis added)).

As discussed more fully below, construing the evidence in the light most

favorable to petitioners, we find that they offered more than sufficient evidence upon which

a rational trier of fact could find retaliatory motivation and therefore need not rely solely

on temporal proximity to establish causation.  Further, the acts of reprisal of which

petitioners complain were allegedly continuous and span a period of time which includes

Longerbeam's first expression of concern in December 2017 and again in April 2018 about

the magistrate court arrangement, Buracker's grievance-related hire in June 2018, his

October 2018 ethics complaint, and his own complaint about the magistrate court

arrangement in December 2018.  Therefore, the intermittent protected activity and the

alleged ongoing, actionable conduct culminating in petitioners' termination is more than

sufficient to permit a reasonable jury to find an inference of retaliation.  *Cf. Conrad*, 198

W. Va. at 375, 480 S.E.2d at 814 ("If plaintiff's evidence is believed and construed most

22

favorably to her, then her complaints were ongoing and continued up to her discharge. Thus, an inference arises that the discharge resulted from the employer's desire to relieve itself of a complainer (about sexual harassment) and, perhaps, to solve the harassment problem by removing the victim.").

Therefore, we find that the circuit court erred to the extent it relied on a purported absence of temporal proximity in granting summary judgment against petitioners.

B.     WHISTLE-BLOWER ALLEGATIONS

Next, we turn to the circuit court's handling of the technical requirements of petitioners' whistle-blower claims. The circuit court concluded that petitioners' evidence was "legally insufficient" to establish a prima facie case of whistle-blowing. While petitioners challenge nearly every aspect of the circuit court's orders in this regard—including its mishandling of the burden-shifting paradigm as addressed more fully below—we focus our present discussion on the statutory whistle-blower elements.

The Whistle-blower Law provides that "[n]o employer may discharge, threaten, or otherwise discriminate or retaliate against an employee . . . because the employee . . . makes a good faith report . . . verbally or in writing, to the employer or appropriate authority, an instance of wrongdoing or waste." W. Va. Code § 6C-1-3. As with other discrimination and retaliation employment claims, the employer may defend

against a whistle-blower claim by proving "that the action complained of occurred for separate and legitimate reasons, which are not merely pretexts." *Id*. § 6C-1-4(c).

We find that despite its exhaustive citation to the statutory definitions pertinent to petitioners' whistle-blower claims, the circuit court's order is replete with unsupported conclusions about these requirements. For instance, as to Buracker's whistle-blower claim, the order concludes that Buracker's ethics complaint about his coworker's personal use of a department vehicle—a fairly classic instance of whistle-blowing—did not constitute a "disclosure" under the Whistle-blower Law because a supervisor was already aware of and authorized the vehicle use. However, the Whistle-blower Law defines "good faith report" as "a report of conduct defined in this article as wrongdoing or waste which is made without malice or consideration of personal benefit and which the person making the report has reasonable cause to believe is true." *Id*. § 6C-1-2(d) (1988). Nothing in the statutory scheme suggests that a "good faith report" of "wrongdoing" may not include wrongdoing of which a supervisor is already aware or sanctioned.

Turning to the analysis of petitioners' whistle-blowing about the magistrate court arrangement, we struggle to encapsulate the reasoning outlined in the orders on appeal, which finds that petitioners presented no genuine issue for trial. Suffice it to say, we find that the analysis fails to construe petitioners' evidence in the light most favorable to them and in accordance with the statutory requirements. We will nevertheless attempt to address the orders' primary points of emphasis.

24

First, the orders incorrectly state that petitioners "cite[] no statute or regulation that was violated" by the magistrate court arrangement. We note that while violation of statute or regulation is included as a type of "wrongdoing" under the Whistleblower Law, the definition reads more broadly: "'Wrongdoing' means a violation which is not of a merely technical or minimal nature of a federal or state statute or regulation, of a political subdivision ordinance or regulation or of a code of conduct or ethics designed to protect the interest of the public or the employer." *Id.* § 6C-1-2(h). More to the point however, petitioners' stated concerns regarding the magistrate court arrangement clearly invoke the due process and equal protection provisions of the Constitution, and their filings below more specifically reference West Virginia Code § 50-4-3 regarding right to counsel, and Rule 7 of the West Virginia Rules of Criminal Procedure for Magistrate Court regarding the right to enter a plea.

The orders' declaration of the absence of a "statute or regulation" which the magistrate court arrangement violates notwithstanding, they then ostensibly proceed to demonstrate that the magistrate court arrangement technically violated no legal principles. The analysis engages in a speculative one-sided debate—apparently unsupported by any record evidence—about whether certain hypothetical students may have actually elected to proceed without counsel, the particulars of the "informal resolution process," and the decision-making of the magistrate in implementing the "process." Finally, rather than assessing petitioners' evidence in conjunction with the applicable statutory definitions, the order notes that the complained-of conduct is that of an elected official—as though such

25

officials are immune from a whistle-blower's accusations.  This discussion not only fails to construe the evidence in the light most favorable to petitioners; it fails to apply the statutory criteria and misapprehends the underlying purpose of our whistle-blower law.

We have counseled that "nothing in our Whistle-blower Law requires an employee to have been ultimately correct in his or her assessment of the wrongdoing or waste.  Quite the contrary, West Virginia Code § 6C-1-2(d) requires only that an employee have 'reasonable cause to believe' the report of such conduct is true."  *Taylor*, 237 W. Va. 549, 562 n.21, 788 S.E.2d 295, 308 n.21 (2016); *see also Conrad*, 198 W. Va. at 367, 480 S.E.2d at 806, syl. pt. 7, in part (holding that for purposes of HRA retaliation claims the employee's opposition to the prohibited practice "must be reasonable in the sense that it must be based on a set of facts and a legal theory that are plausible.").  As the Court observed in the parallel context of HRA retaliation, the purpose of protecting those who in good faith oppose prohibited practices

> would be wholly defeated if [the] protection applied only to those individuals who confidently know the technical area of . . . law and who correctly predict how its doctrine will ultimately be applied in a court of law. Given those unpredictable variables, few rational employees would take much solace in the protection from retaliation offered by such a narrow construction of [anti-retaliation provisions].

*Hanlon*, 195 W. Va. at 112, 464 S.E.2d at 754.

Further, this Court long ago rejected the "decidedly minority view" in asserting a claim for retaliation for opposing prohibited practices, that the prohibited

26

practice must have actually occurred. *Id*.; *see also Conrad*, 198 W. Va. at 367, 480 S.E.2d at 806, syl. pt. 7, in part ("Thus, even if there was no actionable sexual harassment, the plaintiff could still have been engaged in a protected activity if she complained about being sexually harassed."). We find nothing in our statutory scheme requiring a whistle-blower to articulate with unassailable precision an exhaustive legal basis for their report of wrongdoing or waste. Therefore, this extensive preoccupation with the technical correctness of petitioners' complaints is beside the point. It is Shepherd's alleged *retaliation* for these complaints from which petitioners are protected—whether wrongdoing actually occurred—insofar as their complaints constitute a "good faith report" of "wrongdoing" under the statutory definitions.

Moreover, while the orders state that "[e]ven if there was a legal basis for [petitioners' complaints], the conduct at issue was that of an elected magistrate[,]" they do not explain the significance of this statement. Nothing in our Whistle-blower Law requires the "wrongdoer" to be an individual inside the employment relationship, much less exempts elected officials—frequently the target of whistle-blower complaints—from its scope. This is well-demonstrated by the Whistle-blower Law permitting a "good faith report" to be made not only to an employer or supervisor, but an "appropriate authority" *See* W. Va. Code § 6C-1-2(a) (defining "[a]ppropriate authority" as including a "county . . . government body, agency or organization having jurisdiction over criminal law enforcement . . . or a member, officer, agent, representative or supervisory employee of the body, agency or organization."); *see also Jarrell v. Frontier W. Va., Inc*., 249 W. Va. 335,

895 S.E.2d 190, 201 (2023) (Hutchison, J., dissenting) (discussing "internal" and "external" whistleblowing). Here, petitioners complained to their supervisors—who are both definitional "employers" and "appropriate authorit[ies]" under the Whistle-blower Law—as well as to an assistant prosecutor, who also qualifies as an "appropriate authority" under the statutory definition.

In the latter regard, Shepherd argues that even if Longerbeam did complain to an assistant prosecutor, he would have "no authority to take corrective action" against the magistrate. Again, the Whistle-blower Law contains no requirement that a whistle-blower must direct his or her good faith report to the most appropriate oversight or prosecutorial entity to constitute protected activity under the Law. The Whistle-blower Law requires only that a good faith report be made to an "appropriate authority" as defined therein. Much as we observed in *Hanlon*, whistle-blowers would scarcely be comfortable in coming forward knowing that the fate of their protection rests precariously on their ability to both articulate the precise authority for the wrongdoing or waste and report it to the "most" authoritative entity. We therefore find that the circuit court erred in failing to construe petitioners' whistle-blower evidence in their favor and in accordance with the statutory criteria.[23]

---

[23] We decline to address whether Longerbeam's memo of complaints presented during the "morale meeting" constitutes whistle-blowing in the first instance, as the order on appeal fails to evaluate this evidence in accordance with the statutory scheme. Instead, (continued . . .)

C.      THE BURDEN-SHIFTING PARADIGM

We turn now to the more generalized findings that petitioners' claims present no genuine issue of fact for trial, thereby warranting summary judgment. Peppered throughout the circuit court's orders are references to the burden-shifting paradigm described above, concluding that summary judgment was proper because petitioners failed to demonstrate a prima facie case for their various causes of action. Despite the purported absence of a prima facie showing—which ends the analysis—the orders on appeal nonetheless wade into the remainder of the paradigm, summarily concluding that "Shepherd terminated [petitioners'] employment for a legitimate business reason" which was "not merely pretext." Petitioners argue that the circuit court improperly managed the burden-shifting and engaged in improper fact-finding in its handling of petitioners' evidence. We agree.

We begin by restating the burden-shifting framework. In *Shepherdstown VFD* we adopted the United States Supreme Court's approach, first established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to govern our courts' consideration of the sufficiency of evidence of discrimination or retaliation:

> "First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant 'to

the order focuses on Shepherd's contention that any such complaints were not revealed to the decisionmakers involved in Longerbeam's discharge, therefore, they could not provide retaliatory animus for Longerbeam's discharge.

articulate some legitimate, nondiscriminatory reason for the employee's rejection.' (citation omitted). Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. (citation omitted)."

172 W. Va. at 637, 309 S.E.2d at 352 (quoting *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 252-53 (1981)). The orders on appeal summarily conclude that petitioners established no prima facie case, buttress this conclusion by accepting Shepherd's proffered reason for termination, and "find" the absence of pretext.[24]

As per our caselaw, petitioners are required to establish prima facie evidence that they engaged in protected activity of which their employer was aware and were subsequently discharged, along with evidence from which retaliatory motivation can be

---

[24] As evidence of the orders' conflation of these concepts—in a section curiously entitled "[t]he burden does not shift to Shepherd to rebut pretext"—the orders state that Shepherd need not "prove that the reasons offered for the termination of [petitioners'] employment were *not* pretextual." (Emphasis added). Nowhere in our burden-shifting paradigm must an employer prove *absence* of pretext; assuming the existence of a prima facie case, the burden then shifts to the employer to first proffer a legitimate, non-prohibited reason for the employment action. The burden then shifts back to the employee to adduce evidence of the *presence* of pretext. We believe this case presents a not-uncommon problem described by Justice Cleckley in *Skaggs v. Elk Run Coal Company*:

> The confusion on this point, we think, points to a larger problem in this area of the law and that is the extent to which courts (including this one) and litigants often have been so preoccupied by the trees of prima facie case, pretext, shifting burdens, and other labels, that they have not seen the forest of discrimination.

198 W. Va. 51, 74, 479 S.E.2d 561, 584 (1996).

30

inferred. *See Frank's Shoe Store*, 179 W. Va. at 54, 365 S.E.2d at 252, syl. pt. 4. To that end, Buracker adduced evidence that Shepherd was forced to hire him to a position it previously denied him and for which non-selection Buracker claimed age discrimination; that the Chief thereafter called Buracker his "adversary"; that during his tenure he made two very serious and vocal complaints which he maintained violated ethical, constitutional and criminal procedural tenets; and that from the outset of his full-time tenure until his termination less than a year later he was held to a different standard of responsibilities and accountability than other officers. Similarly, Longerbeam adduced evidence that he repeatedly expressed concern about the magistrate court arrangement to an assistant prosecutor, the chief of campus police and the Shepherd official overseeing campus policing and was similarly held to a different standard of accountability, culminating in his discharge. *See, e.g., Conaway v. E. Assoc. Coal Corp.*, 178 W. Va. 164, 171, 358 S.E.2d 423, 430 (1986) (establishing that retaliatory or discriminatory animus may be proven by, inter alia, "a case of unequal or disparate treatment between members of the protected class and others" (footnotes omitted)).

Rather than crediting petitioners' evidence in this regard—which is more than sufficient to establish a prima facie case—the orders on appeal summarily accept Shepherd's proffered reason for termination, dispositively concluding that "Shepherd had a legitimate reason for the termination of the [petitioners'] employment that was not merely pretext. Shepherd conducted an investigation and concluded that the [petitioners] engaged in misconduct and acted unprofessionally." Even in its discussion of pretext, the analysis

31

conclusively accepts Shepherd's position that petitioners "failed to conform with Shepherd's model of campus policing" and "[t]his was the basis for the termination of [petitioners'] employment." Shepherd's proffer of a legitimate, non-discriminatory reason for petitioners' charge simply implicates the issue of pretext, thereby creating disputed issues of motive which must be resolved by the finder of fact. *See, e.g., Hanlon*, 195 W. Va. at 113, 464 S.E.2d at 755 ("The defendant's response that her discharge was the result of the recommendation of an expert management consultant simply put the matter of motive at issue.").

And while the circuit court's orders dedicate a brief discussion to pretext, rather than examining petitioners' evidence and construing it in the light most favorable to them, the orders strain to render the evidence immaterial. Petitioners' primary evidence of pretext is their contention that their conduct during the two incidents for which they were allegedly terminated was in all respects legally proper. The orders attempt to redirect from this evidence by stating that "[w]hether [petitioners] had probable cause to enter the student's housing unit on October 7, 2018 or to conduct the traffic stop on January 6, 2019 is not the issue." To the contrary—as to pretext—it is precisely the issue. Ms. Frye testified that petitioners were terminated because they lacked probable cause for their dorm room entry; other decisionmakers equivocated on this point. Obviously, if a jury believes that petitioners did have probable cause for entry, it may likewise find that Shepherd's stated basis for discharge was pretextual. *See, e.g., Conaway*, 178 W. Va. at 171, 358 S.E.2d at

430 (establishing that retaliatory or discriminatory animus may be proven "by the elimination of the apparent legitimate reasons for the decision[]").

Further, the decisionmakers responsible for petitioners' termination have articulated the basis for their termination in a variety of manners, running the gamut from their entry into the dorm room being merely "nonconsensual" in violation of "community policing" ideals to "lacking probable cause"—a professional misstep with serious legal consequences. As to the traffic shop, Chief McAvoy admitted that both the stop and citations issued were lawful but constituted "targeting" and demonstrated inconsistent enforcement. Therefore, if petitioners establish that their conduct was in fact entirely lawful and appropriate under law enforcement standards—or even Shepherd's "community policing" standards—a jury could certainly conclude then that Shepherd's stated reason for their firing was pretextual. *See Skaggs*, 198 W. Va. at 74, 479 S.E.2d at 584 (noting that proof "that the employer acted *incorrectly* . . . would clearly be relevant in proving pretext" (emphasis added)). A demonstration of pretext permits a jury to infer discriminatory motive on the part of the employer. *See Skaggs*, 198 W. Va. at 59, 479 S.E.2d at 569, syl. pt. 5, in part (holding that if "the fact-finder disbelieves the defendant's explanation for the adverse action taken against the plaintiff, the factfinder justifiably may conclude that the logical explanation for the action was the unlawful discrimination"); Syl. Pt. 5, in part, *Barefoot v. Sundale Nursing Home*, 193 W. Va. 475, 457 S.E.2d 152 (1995), *holding modified on other grounds by Dodrill v. Nationwide Mut. Ins. Co.*, 201 W. Va. 1, 491 S.E.2d 1 (1996) ("A finding of pretextuality allows a juror to reject a defendant's proffered

33

reasons for a challenged employment action and, thus, permits the ultimate inference of discrimination."); *Moore v. Consolidation Coal Co.*, 211 W. Va. 651, 657, 567 S.E.2d 661, 667 (2002) ("'When pretext is at issue in a discrimination case, it is a plaintiff's duty to produce specific facts which, reasonably viewed, tend logically to undercut the defendant's position.'" (quoting *Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 796 (1st Cir.1992))).

The circuit court's orders stray from our fundamental principle in considering an award of summary judgment:

> [T]he function of the circuit court on a summary judgment motion is to determine whether the proffered admissible evidence shows circumstances that would be sufficient to permit a rational finder of fact to infer a discriminatory motive. It is not the province of the circuit court itself to decide what inferences should be drawn.

*Hanlon,* 195 W. Va. at 99, 464 S.E.2d at 741, syl. pt. 4, in part. "Courts take special care when considering summary judgment in employment and discrimination cases because state of mind, intent, and motives may be crucial elements." *Williams*, 194 W. Va. at 61, 459 S.E.2d at 338.

We therefore conclude that the circuit court erred in finding that petitioners failed to establish a prima facie case of retaliation—as to both their HRA retaliation and whistle-blower claims—and that there were no genuine issues of material fact sufficient for trial. Accordingly, we reverse the circuit court's grant of summary judgment to Shepherd as to these claims and remand for further proceedings.

D.    DISABILITY DISCRIMINATION

In contrast to petitioners' retaliation claims, however, we find that the circuit court properly granted Shepherd summary judgment as to Buracker's disability discrimination claim.   The circuit court concluded that Buracker's diabetes did not constitute a "disability" under the HRA and that he failed to adduce evidence that would establish causation.   We agree that Buracker's evidence is insufficient to create an inference of disability discrimination such as to survive summary judgment.

> As the Court has succinctly explained,
>
> to establish a prima facie case of disability discrimination, the plaintiff must show that he is a disabled person within the meaning of the law, that he is qualified to perform the essential functions of the job (either with or without reasonable accommodation), and that he has suffered an adverse employment action *under circumstances from which an inference of unlawful discrimination arises*."

*Skaggs*, 198 W. Va. at 71 n.22, 479 S.E.2d at 581 n.22 (emphasis added).   Assuming, but not deciding, for purposes of this claim that Buracker is a qualified person with a disability as defined in the HRA, his evidence fails to support an inference of discrimination on the basis of his disability.[25]   Buracker provides no evidence that Shepherd identified his

---

[25] We do not, however, agree with Shepherd's contention, as adopted by the circuit court, that Buracker's responses to requests for admissions (the content or significance of which are not identified) are not competent "evidence" for consideration at summary judgment.   The circuit court's order repeats this contention with respect to answers to interrogatories pertinent to Longerbeam's whistle-blower claim.   Rule 56 plainly provides that summary judgment may be based on "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there (continued . . .)

diabetes-related urination as problematic, as opposed to the fact that his body camera remained on for the duration. Further, other than his superiors asking him why he was urinating with his body camera on (once during the course of the larger investigation into the dorm room entry and traffic stop), Buracker fails to identify how his diabetes or related physical effects were in any way invoked or implicated during his tenure. Because Buracker fails to identify any evidence that would allow a reasonable trier of fact to find an inference of discrimination resulting from his alleged disability, we affirm the circuit court's grant of summary judgment as to this claim.

### E.    *HARLESS* WRONGFUL DISCHARGE

Finally, we turn to petitioners' *Harless* claims for wrongful discharge. As to these claims, the circuit court granted Shepherd summary judgment based on 1) the "substantive reasons" identified as to petitioners' HRA and whistleblower claims; and 2)

---

is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Both of petitioners' discovery responses were properly verified under oath.

Similarly, we reject Shepherd's contention that merely because much of petitioners' evidence is drawn from their own testimony, it is the type of "self-serving" evidence insufficient to resist summary judgment. Petitioners' testimony is replete with specific facts and occurrences properly subject to cross-examination and rebuttal evidence rather than subjective, conclusory allegations of retaliation.

its determination that common law *Harless* discharge claims are duplicative of petitioners' statutory claims, relying on federal caselaw to that effect. [26]

As to the circuit court's commensurate finding—that petitioners' statutory claims and *Harless* claims are duplicative and must be disposed of at summary judgment stage—we find that this Court has previously permitted these claims to coexist. *See Burke v. Wetzel Cnty. Comm'n*, 240 W. Va. 709, 815 S.E.2d 520 (2018) (reversing 12(b)(6) dismissal of companion HRA, whistleblower, FMLA, and *Harless* claims and finding the alleged statutory claims to be "[t]he sources of the public policy at issue" for *Harless* purposes);[27] *Roth v. DeFeliceCare, Inc.*, 226 W. Va. 214, 223, 700 S.E.2d 183, 192 (2010)

---

[26] In addition to the HRA and Whistle-blower Law, petitioners briefly mention that "enforcement of the law" constitutes an additional substantial public policy upon which their *Harless* claims may proceed. The circuit court failed to address this issue in its award of summary judgment, presumably because of its determination that the *Harless* claims were duplicative of petitioners' statutory claims.

Before this Court however, petitioners' argument consists of nothing more than their statement that "it should go without saying that the legislature's creation of a criminal law implies that it [sic] the state, as a matter of policy, has an interest in preventing the prohibited activity[.]" Because petitioners provide no authority or argument in support of this issue, we decline to address it. *See State v. LaRock*, 196 W. Va. 294, 302, 470 S.E.2d 613, 621 (1996) ("Although we liberally construe briefs in determining issues presented for review, issues which are not raised, and those mentioned only in passing but are not supported with pertinent authority, are not considered on appeal.").

[27] The federal precedent relied upon by Shepherd predates our decision in *Burke*. In fact, more than twenty years before *Burke*, a federal district court observed that "[t]here is a developing line of authority from the Supreme Court of Appeals . . . which one might argue signals the erosion of" the federal precedent finding that HRA and common law discharge claims cannot coexist. *Burgess v. Gateway Commc'ns, Inc.- WOWK TV*, 984 F. Supp. 980, 983 n.5 (S.D.W. Va. 1997).

(reversing 12(b)(6) dismissal of *Harless* claim where plaintiff pleaded violation of HRA as basis of *Harless* claim and asserted other HRA claims). In an employment case context, the Court has noted that

> [b]ecause procedural law allows alternative contentions, parties to a civil action involving an array of factual and legal motives or theories should be allowed to defer their choice at least until late stages of the proceedings in the trial court. For example, both plaintiffs and defendants in a civil case may be allowed to maintain alternative contentions at least until the evidence is closed, when the circuit court should require a choice to be made as to the form of verdict to be used in submitting the case to the jury and instructions to the jury.

*Barefoot*, 193 W. Va. at 491 n.26, 457 S.E.2d at 168 n.26; *cf. Concrete Spaces, Inc. v. Sender*, 2 S.W.3d 901, 909 (Tenn. 1999) ("[S]ubmitting incompatible and alternative theories of recovery to a jury creates no conflict or duplicative award because until the jury makes its findings of liability, no double recovery can exist.").

However, we are careful to distinguish our caselaw permitting the coexistence of these claims during the pendency of the case with an employee's ability to *recover* on alternative claims at trial for a singular injury. In fact, petitioners concede that they may not "proceed simultaneously *at trial* on both a [HRA] and a *Harless* claim[.]" (emphasis added). And while they make no such concession as to their whistle-blower claim, they offer no authority from this Court suggesting a plaintiff may recover on a common law *Harless* action as well as a statutory whistle-blower action for the same

38

injury.[28] As the sequel to *Harless* itself instructs, "[a] plaintiff may not recover damages twice for the same injury simply because he has two legal theories." Syl. Pt. 7, in part, *Harless v. First Nat. Bank in Fairmont*, 169 W. Va. 673, 289 S.E.2d 692 (1982) ("*Harless II*"); *see also Sewell v. Gregory*, 179 W. Va. 585, 588 n.4, 371 S.E.2d 82, 85 n.4 (1988) ("The Appellants, of course, would not be entitled to recover twice for the same damages, but may assert available alternate theories of liability"); *Wiggins v. E. Assoc. Coal Corp.*, 178 W.Va. 63, 66, 357 S.E.2d 745, 748 (1987) ("The appellant could not have been granted any additional relief under the parallel West Virginia statute because '[d]ouble recovery of damages is not permitted; the law does not permit a double satisfaction for a single injury.'" (citing Syl. Pt. 7, in part, *Harless II*, 169 W. Va. at 674, 289 S.E.2d at 694)); *see generally Manor Care, Inc. v. Douglas*, 234 W. Va. 57, 99, 763 S.E.2d 73, 115 (2014), *superseded by statute on other grounds as stated in State ex rel. W. Va. Univ. Hosps., Inc. v. Scott*, 246 W. Va. 184, 866 S.E.2d 350 (2021) (Workman, J., concurring) (discussing "the distinction between permitting concurrent or cumulative causes of action and improperly permitting duplicative damages").

---

[28] In fact, we note that petitioners ostensibly argue the viability of their *Harless* claim largely as a contingency to the dismissal of their statutory claims. However, in that regard petitioners' reliance on this Court's holding in *Williamson v. Greene*, 200 W. Va. 421, 490 S.E.2d 23 (1997) is misplaced; that case is clearly distinguishable. In *Williamson*, the Court permitted an employee to pursue a *Harless* claim where she was not covered by the HRA because her employer did not meet the minimum employee requirements. *Id.* at 423, 490 S.E.2d at 25, syl. pt. 8. Petitioners do not contend that they or Shepherd do not fall within the construct of their statutory claims.

Having found that disputed issues of material fact preclude summary judgment as to petitioners' statutory claims, we find that those same factual disputes permeate their *Harless* claims. We therefore reverse the circuit court's grant of summary judgment to Shepherd on those claims and remand for further proceedings.

## IV. CONCLUSION

For the foregoing reasons, as to No. 22-609 we reverse that portion of the June 21, 2022, order of the Circuit Court of Jefferson County, West Virginia, granting summary judgment as to Longerbeam's whistle-blower and *Harless* claims and remand for further proceedings. As to No. 22-610, we affirm, in part, the June 21, 2022, order of the Circuit Court of Jefferson County, West Virginia, granting summary judgment as to Buracker's HRA disability discrimination claim and reverse, in part, as to Buracker's HRA retaliation, whistle-blower, and *Harless* claims, and remand for further proceedings.

No. 22-609      Reversed and remanded.

No. 22-610      Affirmed, in part; reversed, in part, and remanded.

40